THE STATE v. IZA HILL, Appellant.

Division Two, February 16, 1918.

1. **INFORMATION: Time-worn Prolixity.** An information which charges all the essential elements of murder is sufficient, although it abounds in tiresome iteration.

2. **WITNESS: Under Sentence: Competency.** A person undergoing a life sentence in the penitentiary is a competent witness on behalf of the State in a murder trial.

3. ———: ———: **Infamy.** The common-law doctrine of infamy attendant upon a person convicted of crime has never been recognized in its fullness in this State. The statutes yet strip such a person of certain civil rights, such as the right to hold office, to vote at an election, to sit on a jury, and if sentenced to the penitentiary for a term less than life he is thereafter to be deemed civilly dead: but Sec. 6383, R. S. 1909, enacted in 1895, removed whatever restrictions to the competency of such a person to testify were supposedly retained in Section 2891, in that it provided that any person who has been convicted of a criminal offense is, notwithstanding, a competent witness—although his conviction may be shown for the purpose of affecting his credibility.

4. **EVIDENCE: Intent: Former Attempt at Murder.** Where defendant was charged with having entered into a conspiracy with another to murder her husband in order that she might collect an insurance policy on his life and divide the proceeds with her said co-conspirator, who in her absence actually committed the crime by cutting the husband's throat and crushing his skull, testimony tending to show that several months before the homicide she attempted to poison deceased is admissible for the purpose of establishing the intent with which the crime was committed.

5. ———: ———: ———: **Rule.** The rule in such cases is that, where the act constituting the crime speaks for itself as showing the intent, or where the criminal intent is presumed from the act itself, evidence of a former attempt to commit the crime is not admissible; but where different inferences may be drawn re-

garding the intent with which the criminal act was done and the circumstances of the act may be susceptible of an interpretation indicating innocence, then such evidence is admissible. [Following State v. Patterson, 271 Mo. 1. c. 109, and State v. Myers, 82 Mo. 668.] Where defendant was absent at the time 'her husband was murdered, the actual commission of the murder was admitted by a plea of guilty by her alleged co-conspirator, and he and her paramour (her co-indictee) alone testify to her having provoked the crime by offering an incentive for its commission (the collection and division of insurance on her husband's life in her favor), and she assails the truth of their testimony, evidence that she had several months previously attempted to murder her husband by poisoning is admissible, not for the purpose of showing that the attempted crime was a part of the one committed, but to show the intent with which the homicide was committed.

6.  **INSTRUCTION: Conspiracy: Crime Committed by One Conspirator Alone.** An instruction defining the criminal liability of each of several persons who form a common design to effect a criminal purpose where one of them in furtherance of such design alone commits the crime, being in accord with the rule as announced and discussed in State v. Othick, 184 S. W. 106; State v. Darling, 216 Mo. 450, 459; State v. Walker, 98 Mo. 95; and State v. Matthews, 98 Mo. 119, is approved.

7.  ————: **Acts and Declarations of Conspirator.** An instruction which tells the jury that, if they believe from the evidence that a conspiracy existed between the defendant and one Jones to commit the crime in question, they might take into consideration any acts shown to have been done or declarations made by either during such conspiracy in furtherance of the common design; but that such acts or declarations not shown to have been done or made, and the acts and declarations of said Jones after he alone committed the crime, were not to be considered, correctly limits the jury to a consideration of the proper evidence.

8.  ————: **Capital Punishment.** The Act of 1917 abolishing capital punishment contained no emergency clause and hence did not become operative until June 18th of that year, and in no wise affected the procedure in a trial which resulted in a conviction in May, 1917; and did not, therefore, render erroneous an instruction which authorized the jury, in case they found defendant guilty of murder in the first degree, to fix her punishment at death.

9.  ————: ————: **Assessed at Life Imprisonment.** Even though the statute abolishing capital punishment was in full force and effect at the time of the trial, an instruction which authorized the jury to fix defendant's punishment at death or life imprisonment was not prejudicial to her rights if her punishment was fixed at life imprisonment.

State v. Hill.

10. **CONSPIRACY: Sufficiency of Evidence.** Direct testimony by a witness that an express understanding had been entered into by him and defendant to murder defendant's husband, when supported by relevant collateral facts and circumstances, is sufficient to establish the conspiracy.

11. ————: **Circumstances.** Not only may a common purpose to commit a crime be proved by circumstantial evidence, but all the acts and circumstances indicative of the purpose between the accused and a third person may be shown to establish the relation.

Appeal from Ray Circuit Court.—*Hon. F. P. Divilbiss, Judge.*

AFFIRMED.

*J. E. Black, Eugene A. Farris* and *Albert P. Hamilton* for appellant.

(1) Defendant's motion in arrest of judgment should have been sustained for the reason the information failed to charge the defendant with any offense. And because there is a total variance between the offense alleged in the information and the proof in this cause. (2) Alonzo Jones was incompetent as a witness in this cause, because at the time his testimony was given he was under sentence of life imprisonment in the penitentiary. Sec. 6376, R. S. 1909; Ex Parte Marmaduke, 91 Mo. 228. (3) The testimony given by Dr. McGaugh as to alleged poisoning of Lonnie Hill was incompetent and should not have been admitted, for the reason defendant was shown to have had no connection therewith. (4) Testimony as to facts transpiring since the culmination of the alleged conspiracy was incompetent and should have been refused. (5) Proof of a conspiracy should first be introduced and no evidence is competent before the proof of the conspiracy has been made.

*Frank W. McAllister,* Attorney-General, and *George V. Berry,* Assistant Attorney-General, for the State.

(1) The information charges with certainty all the essential elements of the crime and follows well-considered precedents. State v. Barrington, 198 Mo. 36;

State v. Myers, 198 Mo. 232; State v. Spivey, 191 Mo. 91; State v. Thomas, 99 Mo. 256; State v. Burns, 99 Mo. 273. (2) It was not error to permit Alonzo Jones, under life sentence for his part in the murder, to testify, as he was a competent witness. Sec. 6383, R. S. 1909; Kelly's Crim. Law & Prac., sec. 268; State v. Grant, 79 Mo. 113; State v. Long, 82 Mo. 82; State v. Landrum, 127 Mo. App. 658; Sutton v. Fox, 55 Wis. 540; Wills v. Ind. Ter., 15 Okla. 196; Barbee v. Okla. Ter., 16 Okla. 569; State v. Sullivan, 20 R. I. 119. (3) It was not error to permit evidence of a former attempt of defendant to murder Lonnie Hill. It was competent to show motive, intent, general purpose, and a common scheme or plan. State v. Spaugh, 200 Mo. 594; State v. Collins, 181 Mo. 259; State v. Bailey, 190 Mo. 279; State v. Dettmer, 124 Mo. 433; State v. Jones, 171 Mo. 407; State v. Rudolph, 187 Mo. 84; State v. Rasco, 239 Mo. 575; State v. Weisman, 238 Mo. 555; State v. Hyde, 234 Mo. 224; People v. Molineux, 168 N. Y. 264. (4) The State was not in error in the admission and rejection of evidence; and if any errors were committed, they were fully cured by the instructions. State v. Napper, 141 Mo. 405; State v. Whelan, 148 Mo. 290; State v. Bateman, 198 Mo. 222. (5) The instructions given by the court were so full, clear and plain that the jury could not go astray thereunder. (a) Number 4 defines the crime of murder in the first degree, fixes the responsibility of each conspirator, and tells the jury what is necessary to find from the evidence before they can find the defendant guilty. State v. Thomas, 78 Mo. 337; State v. Shout, 263 Mo. 373. (b) Number 4b, on conspiracy, was correct in form and substance. State v. Bobbitt, 242 Mo. 284; State v. Truenell, 79 Mo. App. 245; State v. Davis, 80 Mo. 244; State v. Darling, 216 Mo. 459; State v. Othick, 180 S. W. 108. (c) Number 4c, on weight of testimony of co-conspirator, was correct under the law. State v. Grant, 79 Mo. 113; State v. Long, 82 Mo. 82; State v. Taylor, 98 Mo. 244. (d) Number 5, on the uncorroborated testimony of any accomplice alone, was in correct form. State v. Sassman,

214 Mo. 729; State v. Kock, 142 Mo. 524; State v. Walker, 109 Mo. 109. (e) Number 6, on credibility of witnesses and weight of testimony, is in correct and many times approved form. State v. Knock, 142 Mo. 523; State v. Hudspeth, 159 Mo. 200; State v. Thomas, 78 Mo. 341; State v. Henderson, 186 Mo. 492; State v. Hicks, 92 Mo. 434. (f) Number 9, submitting three forms of verdict, was in approved form. Appellant cannot complain of the form which told the jury they might assess the death penalty, as the jury fixed a lower punishment. She made no objection to this form when it was given. State v. Stockwell, 106 Mo. 40; State v. Wheeler, 108 Mo. 664; State v. Bobbitt, 215 Mo. 31; State v. King, 203 Mo. 571; State v. Goldsby, 215 Mo. 57. (6) The law does not require that the conspiracy be proved before acts and declarations thereunder can be shown. State v. Walker, 98 Mo. 103; State v. Shout, 263 Mo. 373; State v. Copeman, 186 Mo. 109.

WALKER, P. J.—The appellant and one Marshall Dumas were charged in an information filed by the prosecuting attorney of Ray County with murder in the first degree. A severance was granted and at the February Term, 1917, of the circuit court of said county, appellant was tried and the jury failing to agree, the case was continued until the May Term, 1917. Upon a trial at this term appellant was convicted as charged and her punishment assessed at life imprisonment in the penitentiary. From this judgment she appeals.

Lonnie Hill, the party charged to have been murdered, was the husband of the appellant. At the time of his death he was in the employ of a citizen of Richmond. The last time he was seen alive was on the evening of September 18, 1916. The next morning, not having attended to his usual duties, his employer went to his room to ascertain the cause of his neglect. He found the deceased lying across the foot of his bed on his face. Calling to him and receiving no reply, the employer caught hold of him and found not only that he was dead but that *rigor mortis* had set in. Upon the body being

turned over, the face of the deceased and the adjacent wall, not before noticed, were found covered with blood. After the removal of the body to an undertaker's several wounds, which appeared to have been inflicted with a sharp instrument, were found on the head and neck of the deceased. The wound on the neck had severed the jugular vein. This, as well as the wound in the head, which pierced the skull, was sufficient to produce death. Circumstances indicative of a guilty connection with the crime led soon thereafter to the arrest of appellant, her co-indictee, and one Alonzo Jones, the latter being separately charged with complicity in the crime. Upon the information being filed against him, he entered a plea of guilty and was sentenced to a life term in the penitentiary. It is principally upon his testimony that the jury found the appellant guilty. The parties are all negroes. The *animus* for the crime, as stated by Jones, was to procure $371 from an industrial insurance company in which the deceased held a policy payable to his wife, the appellant. Jones, while serving his sentence in the penitentiary, was taken therefrom and testified at the trial. He testified that he was hired by appellant to go from Kansas City to Richmond to kill the deceased upon the promise that she would pay him therefor $125 when she secured the money on the insurance policy; that in consummation of this conspiracy, he went to Richmond and killed the deceased and returned to Kansas City. The appellant testified that she had known Jones slightly for two or three years, but had never entered into a contract with him or anybody else to kill her husband; that she knew nothing of the latter's death until early one morning when Jones came to the house, where she was living with her co-indictee and before they were out of bed, seeking admittance; that he was admitted by her co-indictee, Dumas, who remarked to him when he entered, " 'Did you do that?' and she says, 'Do what?' Jones said, 'Yes,' and she again said, 'Do what?' and Jones said, 'Kill Lonnie Hill, that's what!' and then he said, 'Don't you open your

mouth or I will kill you,' " and jumped at her with a knife.

There was also testimony that appellant had attempted to poison the deceased with strychnine tablets dissolved in alcohol several months before his death. This she denied.

The motion for a new trial preserves these alleged errors for consideration: Permitting Alonzo Jones who was in the penitentiary under a life sentence for the murder of the deceased, to testify against the appellant; admitting illegal and incompetent testimony as to an attempted poisoning of the deceased by appellant without showing any connection between that offense and the one with which the appellant was charged; in giving instructions numbered 4, 4a, and 4b, on the part of the State; in giving instruction 4c; improperly instructing the jury as to punishment; the sufficiency of the information to charge any offense; variance between the offense charged and the proof of same; and because there was no adequate proof of any conspiracy.

I. The contention as to the sufficiency of the information is not well founded. In charging

**Information.** the crime of murder all of the required essentials are employed. That the information abounds in tiresome iteration is true, but in its employment the pleader but followed time-worn precedents, always the safest course so long as a simpler and less prolix system of criminal pleading is not expressly authorized.

II. It is urged that error was committed in permitting Alonzo Jones to testify on behalf of the State while undergoing a life sentence in the peni-

**Convict as** tentiary. Under the common law he would **Witness.** have been incompetent. This rule of exclusion, so far as it affects the right of one convicted of crime to testify, has long since been abolished, not only in England, but in the greater number of our States. [1 Wigmore Ev., secs. 519 and 524 and notes;

5 Chamb., Mod. Ev., sec. 3663 and notes; 11 Am. Jurist, 362; 15 Columbia L. Rev. 467.]

The amelioration of the rigors of the common law punishment for crime is as evident in regard to the admission of the testimony as it is in other phases of the history of jurisprudence. Statutes liberal in their latitude in this regard have been enacted not only on account of a more humane disposition to abate somewhat the severity of punishment, but from necessity; it being found that the admission of this character of testimony was of more practical value in the administration of justice than the addition of infamy with its consequent deprivation of civil rights. [Bentham's Rationale of Ev., book 9, pt. 3, Ch. 3, quoted at some length in 1 Wigmore, section 519, page 649, and lucidly epitomized in Appleton Ev., Ch. 3.]

The common law doctrine of infamy attendant upon a conviction for crime has never been recognized in its fullness in this jurisdiction. We have since the organization of the State had statutes defining the extent to which one convicted of crime was thereby stript of civil rights. These were by specific provisions made applicable to the different classes of offenses in our criminal code. They differed only in minor particulars and usually embraced within their terms a deprivation of the right to hold office, to vote at an election, to sit on a jury and to testify as a witness. In addition, a general statute provided that a sentence of imprisonment in the penitentiary for a term less than life, suspended all civil rights of the persons so sentenced, during the term thereof, and forfeited all public offices and trusts, authority and power; and the persons sentenced to such imprisonment were thereafter to be deemed civilly dead. This statute unchanged in its terms, is now Section 2891, Revised Statutes 1909. The statutes limiting the rights of citizenship upon conviction for crime remained practically without change until 1879, when the clause in each prohibiting convicted persons from testifying was eliminated; otherwise, the limitation upon the rights of those convicted has remained as it now appears in the

present statutes. [See Secs. 4504, 4631, 4673, 4875, R. S. 1909.] In Ex parte Marmaduke, 91 Mo. 228, we held, in construing one of these disqualifying statutes, that all persons convicted after the going into effect of the Revised Statutes of 1879 became competent witnesses by virtue of said revision. The correctness of this ruling has not been questioned.

The incompetency, therefore, of this class of witnesses has not existed since the revision of 1879, unless it can be said that section 2891, supra, is to be construed to preclude persons within its provisions from testifying. Whatever force section 2891 may heretofore have had in this regard has been removed by legislation. In 1895 (Laws 1895, p. 284) a statute, now section 6383, Revised Statutes 1909, was enacted which provided that any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, etc.

From the foregoing it will be seen that a conviction of any offense, denounced by our law, will not render the convict incompetent to testify in a court of justice. Appellant's contention must, therefore, be overruled.

III. The admission of testimony tending to show an attempted poisoning of the deceased by appellant several months before the homicide is urged as error. The burden of this objection is that no connection was shown between this attempt and the crime for which appellant was being tried. This complaint falls Former short of raising a tenable objection to the admission of the testimony. There was no pretense on the part of the State that the attempted crime was a part of the one committed. It was in no sense the purpose of the introduction of this testimony to establish the crime, but to show the intent with which it was committed. On this ground testimony of this character, with the modification we will hereafter refer to, is held to be admissible.

WHITE, C., in State v. Patterson, 271 Mo. 99, l. c. 109, has recently, with painstaking care, reviewed and com-

273 Mo.—22

piled the numerous Missouri cases on this subject, begin-
ning with a learned opinion by PHILIPS, C., in State v.
Myers, 82 Mo. 558, which for many years has been the
leading case on the subject. The rule deduced from
these cases is, that where the act constituting the crime
speaks for itself as showing the intent, or where the
criminal intent is presumed from the act itself, such evi-
dence is not admissible; but where different inferences
may be drawn regarding the intent with which the crim-
inal act was done and the circumstances of the act may
be susceptible of an interpretation indicating innocence
then such evidence is admissible. Here the appellant
was absent at the time of the homicide. Its actual com-
mission was admitted by the witness Alonzo Jones. He
and the appellant's paramour, Dumas, alone testify to
her having provoked the crime by offering an incentive
for its commission. She assails the truth of this testi-
mony. Clothed as she is with a presumption of inno-
cence, different inferences may be drawn as to the in-
tent with which the crime was committed. If evi-
dence existed susceptible of an interpretation indica-
tive of her innocence, she would have been entitled to its
admission; on the other hand, if facts existed of the at-
tempted commission by her of a former act against the
deceased of a kindred nature to the one with which she
was charged, taken in connection with the facts and cir-
cumstances of her life and that of the deceased, all of
which were in evidence, then the testimony was properly
admitted. It is true that this evidence is based prima-
rily upon the testimony of the witness Dumas, but the
evidence of the former crime was not confined to her
alleged statement. Confined to Dumas, its credibility
might be open to serious question, but not its admissi-
bility. Dumas's testimony, however, is corroborated by
that of the doctor who stated that he had treated the
deceased for strychnine poisoning at about the time the
appellant stated she had made the attempt. The char-
acter of this testimony, therefore, as tending to show
an intent to commit the crime for which she was on

trial, is sufficiently established to authorize its admis-
-sion.

IV. The giving of instruction number four is alleged
to have been error. This instruction defined the criminal
liability of each of several persons who form
Instructions. a common design to effect a criminal purpose
and one of same in furtherance of such design
alone commits the crime. This general instruction is
followed by a concrete application of the rule to the
facts in evidence. We have recently had occasion in
an opinion by WILLIAMS, J. (State v. Othick, 184 S. W.
106, to discuss and define in accordance with common
law principles and our own rulings the doctrine of
criminal liability of persons guilty of a conspiracy
to commit crime and the consequent equal guilt
of all upon a showing that the crime conspired was com-
mitted by one of them in consummation of the common
purpose. We have also had occasion to fully discuss
this subject in State v. Darling, 216 Mo. 450, 459, and
in what are termed in our criminal annals the Bald
Knob cases. [State v. Walkers and Matthews, 98 Mo.
95, 119, 125, 135.] The instruction here under review
clearly conforms to the rule announced in these cases
and its correctness is therefore too well established to
be the subject of further controversy.

Instruction 4a defines the technical words necessary
to constitute murder in forms too frequently approved
to waste words in discussing them.

Instruction 4b told the jury in substance that, if they
believed from the evidence that a conspiracy existed
between the appellant and Alonzo Jones to commit the
crime in question, they might take into consideration
any acts shown to have been done or declarations made
by either during such conspiracy in furtherance of the
common design; but that such acts or declarations not
shown to have been thus done or made, or the acts or
declarations of said Jones after the death of the de-
ceased, were not to be taken into consideration; or put
more concretely, that such acts and declarations were

not admissible against the appellant, after the consummation of the common enterprise. This instruction also correctly defines a conspiracy as applied to the facts at bar and a common design as constituting an essential of such conspiracy. The law as therein announced does not violate the rule as to the admission of evidence of this character and the instruction is therefore not subject to valid criticism. [State v. Roberts, 201 Mo. 702, 728; State v. Gatlin, 170 Mo. 354; State v. Walker, supra.]

Instruction 4c defined the competency of the witness Jones, who was serving a life sentence in the penitentiary, and stated that his conviction could be shown to affect his credibility. This was in accordance with section 6383, supra, the application of which we have discussed. The conclusion reached in regard thereto disposes of the objection to this instruction.

V. It is contended that the jury was improperly instructed in regard to the punishment. Three forms of verdict were given; one for a finding of **Punishment.** not guilty and two for guilty, in one of the latter the death penalty was authorized and in the other life imprisonment. The ground of appellant's contention is not given and must therefore be inferred. The record discloses that the trial and conviction was had in May, 1917. This was subsequent to the enactment of the statute abolishing capital punishment, which was approved April 13, 1917, which, however, on account of the absence therefrom of an emergency clause, did not become operative until June 18, 1917. This statute, therefore, could in no wise affect the procedure in this case.

However, if the act had been operative, it would afford no basis for complaint. The instructions correctly defined the crime and the forms of the verdict only had reference to the character of the punishment. The appellant's punishment was fixed at life imprisonment; she cannot complain, therefore, of the form of the

verdict which prescribed the death penalty. The test of error is the presence of prejudice which did not exist.

VI. It is finally contended that there was no proof of a conspiracy, and that the testimony of the so-called conspirators and the instructions based thereon were without authority. A review of the record does not sustain this contention. Not only by direct testimony, but by relevant collateral facts and circumstances, was it shown that an express understanding had been entered into by the appellant and Alonzo Jones to commit this crime. In view of our rulings on this subject the existence of the conspiracy was therefore sufficiently established. Not only have we held that a common purpose to commit a crime may be proved by circumstantial evidence, but that all the acts and circumstances indicative of this purpose between the accused and a third person may be shown to establish the relation. [State v. Shout, 263 Mo. 360; State v. Harrison, 263 Mo. 642.]

There was no reversible error and the judgment should be affirmed. It is so ordered. All concur, *Faris, J.*, in result and in all except paragraph three (3).