**STATE of Missouri, Respondent,**

**v.**

**Grace DEYO, Appellant.**

**No. 50582.**

Supreme Court of Missouri,

Division No. 2.

March 8, 1965.

Thomas F. Eagleton, Atty. Gen., James J. Murphy, Asst. Atty. Gen., Jefferson City, for respondent.

Sam Appleby, Ozark, Edward R. Boyle, Clear Lake, Iowa, Clyde Rogers, Gainesville, for appellant.

FINCH, Judge.

Defendant Grace Deyo and one Bill Shindler were charged jointly with murder in the first degree by poison of Kenneth V. Deyo, husband of Grace Deyo. A severance was granted. Grace Deyo was tried and convicted and sentenced to life imprisonment. On appeal, that conviction was reversed and the case remanded. See State v. Deyo, Mo., 358 S.W.2d 816. The case was retried and defendant Grace Deyo again was convicted and sentenced to life imprisonment. A timely motion for new trial was filed and overruled, and this appeal was taken.

The evidence in the second trial was substantially the same as that in the first trial. The opinion on the first appeal detailed that evidence. It would serve no useful purpose to recite it again, and it will not be repeated herein except insofar as necessary in the consideration of specific issues.

Appellant contends that there was insufficient evidence to prove a conspiracy between appellant and Bill Shindler, and, additionally, that there was no evidence of any overt act by appellant, and that her motion for judgment of acquittal should have been sustained for those reasons. These issues were raised by appellant on the prior appeal, and this court held that the evidence was sufficient to show the existence of a conspiracy, and that evidence of an overt act by appellant under those circumstances was unnecessary. State v. Deyo, supra, 358 S.W.2d 816, 822 [9], [10], [11].

Appellant also complains that the trial court erred in admitting evidence, including statements of appellant, before the corpus delicti was proved. This same issue was raised on the prior appeal, and this court held that it is not essential that the independent proof of the corpus delicti come first in the order of proof. 358 S.W. 2d 816, 819 [5]. In addition, appellant raises the proposition that there was no sufficient proof of the corpus delicti, but that question was ruled against appellant on the prior appeal. 358 S.W.2d 816, 821 [7].

■ Appellant also complains of the admission of proof of certain remarks of Bill Shindler on the basis that these were not made in the presence of appellant and were hearsay. This point was ruled against appellant on the prior appeal. 358 S.W.2d 816, 824 [12]. In view of the fact that there was evidence of a conspiracy, the statements of one of the conspirators were admissible against the other conspirator.

■ Appellant complains of the giving of Instruction No. 3 defining conspiracy, which was as follows:

"The Court instructs the jury that a conspiracy, as that term is used in these instructions, means a combination of two or more persons who use concerted action to accomplish a criminal or unlawful purpose."

No authority is cited by appellant in support of her position. A substantially similar instruction was approved by this court in State v. Hill, 273 Mo. 329, 201 S.W. 58 [4]. See also 2 Raymond's Missouri Instructions, Section 3092. This point is ruled against appellant.

The State relied heavily on statements, both oral and written, of the defendant Grace Deyo. Her written statement was received in evidence as State's Exhibit "A". Omitting caption and signatures, it read as follows:

"This statement is made in the presence of Sheriff George Rose of Ozark County Missouri, and to Trooper John Teichman of the Missouri Highway Patrol. It is made to these persons, without any threat or promise, and I

understand that it may be used either for or against me in a Court of Law.

"My name is Grace Marie Deyo. I am 43 years old. I was born on January 6, 1917 at Clear Lake, Iowa. I am the widow of Kenneth Virgil Deyo, and have 3 children. Their names are, Doris Jean, age 10, Diana Marie, age 4, and Dorothy May Miller, age 20, who lives in Houston, Missouri. At the present time, I am living at RFD #2 Clear Lake, Iowa.

"At approximately August 1958, Bill Shindler started coming around my home at Almartha, Missouri. He first came there to look at our cattle, to see about buying some. Shindler returned to the farm several times since then, during which times, he and I had sexual relations. One of the neighbors told my husband about these visits of Shindler, and Kenneth and him had an argument about it. Bill told me that Kenny had lit into him about it.

"Around April 1959, Bill suggested that he would take Kenny out into the woods and shoot him, because he didn't like the way he was treating me and the kids. I told Bill that he couldn't get away with it, and he didn't say any more about it. Later on, Bill went up to see John Hodges, to see about getting some strychnine poison for him. That was around May sometime. Hodges was the one who told him about it. I don't know if he was going to get it for Bill or not.

"Several weeks before Kenny died, Bill Shindler showed me a small bottle that had a label stating the bottle contained strychnine. He said that he got some fellow in Gainesville to take him to Mountain Home, Arkansas to get it. I had told him that Kenny was taking Vitamin tablets, and he said he would put some of the poison in some capsules and put them in the bottle where Kenny kept his Vitamins. Bill showed me some brown capsules,

that he said he was going to put the poison in. They looked just like the ones Kenny was taking. Bill told me that he was going to put the capsule with the poison in it, back into the bottle of Vitamins. I don't know when he did this, but I did know he was going to do it.

"Kenny would take his Vitamins just before he went to bed every night. On July 27, 1959, at approximately 6:30 P.M., we had our supper. I think that Kenny took his Vitamin around 8 or 8:30 P.M. We sat up and watched the News on TV and then Kenny got sick. He complained of a lot of pain in his left arm and side, and said he thought he was having a heart attack or a stroke. In a short time, he just slid out of the chair and laid on the floor. I thought he might have gotten the pill with the poison in it, but I wasn't sure, because he said he thought he was having a heart attack. I didn't know for sure, because I didn't know how strychnine acted. He laid on the floor until about Midnight, when I felt his pulse and believed he was dead. I had wanted to go get a Doctor, but he wouldn't let me leave him. When I knew he was dead, I went down to Howard Plasters to get help.

"I haven't seen Bill Shindler since Kenny's death, but he had been around my home with other people there. 1 had a sale August 10, 1959, and then came to Clear Lake, Iowa, with my folks. They didn't want me to live down there alone.

"I do remember Bill telling me about this fellow who is supposed to have taken him to Mountain Home, that he had gotten rid of his wife the same way. I don't recall Bill ever saying who this fellow was.

"I have read the above statement consisting of one (1) typewritten page, and it is the truth to the best of my knowledge.

"Signed this 1st day of October, 1959 at the Sheriff's Office in Mason City Iowa, in the presence of the above named Officers."

The defense contended that this statement of Grace Deyo was not a voluntary one. In addition, the defense introduced testimony of Herman Melton, a teacher in special education, and Professor James Edward Bane, a psychology teacher at Southwest Missouri State College. Mr. Melton testified that he gave Grace Deyo the Kuhlman-Anderson test and the results disclosed an I.Q. of 74 and a mental age of 12. Professor Bane administered the revised Stanford-Binet test and Grace Deyo performed on the level of a normal 10–10½-year-old person, and had an I.Q. of 65. Professor Bane examined State's Exhibit "A" and then testified that, based on his experience and his test of Grace Deyo, he was of the opinion that she could not have made that statement. He was cross-examined extensively, but insisted that he would not expect her to do as well as that statement, or to be familiar with some of the words used in the statement.

The court gave three instructions which dealt with statements of the defendant. These were Instructions Nos. 11, 12 and 13, which were as follows:

### "INSTRUCTION No. 11

"The Court instructs the jury that if verbal statements of the defendant have been testified to in this case, they are to be received by you with great caution on account of the liability of witnesses to forget or misunderstand what was really said or intended.

### "INSTRUCTION No. 12

"The Court instructs the jury that any statement or statements made by the defendant, Grace Deyo, received in evidence are to be given such value and weight as evidence as you believe they deserve, if you find that said statement or statements were voluntarily given.

"You are further instructed that to make a statement or statements voluntary in nature, it is not necessary to prove that such statement or statements were given spontaneously, that is, made without either persuasion or questioning.

"In this regard the Court instructs you that by the term 'voluntarily', the Court means not secured by intimidation, promises or duress. In considering whether or not said statement or statements were voluntary you may consider such elements as the sex, age, disposition, her mental qualities, the length of time the defendant was questioned prior to the giving of such statement and the environment or place where said statement or statements were given, as well as all other circumstances existing and admitted in evidence surrounding the defendant at the time said statement or statements were made.

"Therefore, if you find and believe that the statement or statements of the defendant, Grace Deyo, admitted in evidence, were voluntarily made, you will give such value of evidence to said statement or statements as you believe they deserve. However, if you believe that said statement or statements were not voluntarily made, then you should disregard said statement or statements in arriving at your verdict.

### "INSTRUCTION No. 13

"The Court instructs the jury that criminal responsibility does not depend on the mental age of the accused or upon the question of whether her mental age is above or below that of an average or normal person. Mere weakness of mind, ignorance, or deficiency in mental capacity does not excuse the perpetration of a criminal act,

unless the mentality of such person is of such subnormal character as to render her incapable of distinguishing between right and wrong.

"You are further instructed that any evidence in this case concerning the mental age, I.Q. or degree of mentality of the defendant, Grace Deyo, is admissible for one purpose only, and that is, for your consideration, together with all other facts and circumstances as outlined in Instruction No. 12 in determining whether or not the statement or statements given and made by the defendant, Grace Deyo, to or in the presence of law enforcement officers, were made voluntarily."

Appellant does not complain of Instructions Nos. 11 or 12. Neither does she complain of the first paragraph of Instruction No. 13. In fact, appellant's brief states that this paragraph represents a correct expression of the law. Appellant does contend, however, that the second paragraph is improper because it constitutes a comment on the evidence, and it improperly restricted the jury in considering evidence concerning the mental age, I.Q., or degree of mentality of defendant to the question of whether the statements were made voluntarily.

There was no plea in this case that defendant was not guilty by reason of insanity. Neither Mr. Melton nor Professor Bane purported to testify in that regard. However, Professor Bane did testify that in his opinion defendant Grace Deyo could not have made the statement received in evidence as State's Exhibit "A". The State's evidence with respect to Exhibit "A" had been that it was typed by Sheriff Allen and then read and signed by the defendant. Trooper Teichman testified that the words used were the words of Grace Deyo but that the grammar or sentence structure was by Sheriff Allen. Sheriff Rose had testified that Sheriff Allen took down the statement as given by the

defendant. This and other testimony of these witnesses raised a question of fact as to the reliability of State's Exhibit "A" and the extent to which it constituted the statement of Grace Deyo. This was not the same as the question of whether the statement was voluntary, which was also in issue. The latter is a question of whether the statement was induced by something such as intimidation or promises, and it also includes the question of whether the mental condition was such as to make the statement one which was not voluntary. However, the evidence as to her mental capacity also was relevant on the probative value, if any, of Exhibit "A" and the extent to which it should be considered by the jury as a confession by defendant. The weight to be given to Exhibit "A" on this latter question was for the jury under proper instructions.

In the case of State v. Church, 199 Mo. 605, 98 S.W. 16, this court dealt with the admissibility of an alleged confession of the defendant. Evidence of alleged insanity was offered prior to the admission in evidence of the confession for the purpose of establishing its inadmissibility. The court held that the exclusion of the testimony at that point was proper, and that the confession properly was received in evidence. In so holding, the court quoted with approval from State v. Haworth, 24 Utah 398, 68 P. 155 (which in turn quoted from State v. Feltes, 51 Iowa 495, 1 N.W. 755), as follows (98 S.W. 16, 22): "Evidence that the defendant at the time of the alleged confession was intoxicated or insane was proper to impair or destroy the effect of the confession. The defendant was allowed to introduce such evidence upon cross-examination. But he complains that he should have been allowed to introduce it first, for the reasons above set out. In our opinion the court did not err. It was for the jury to determine what weight should be given to his confession, in view of his mental condition as shown."

In 23 C.J.S. Criminal Law § 828, p. 228, the rule is stated as follows: "If mental in-

capacity of accused at the time of making the confession is shown, the confession must be received with caution, and evidence of such mental calibre or condition is competent and material, if not too remote or indefinite, as the fact thereof is to be considered in determining the character of the confession, and in determining whether it was voluntary or involuntary, and also in determining the weight, credibility, and effect to be given the confession."

See also State v. Evans, 345 Mo. 398, 133 S.W.2d 389, 393 [9]; McAffee v. United States, 72 App.D.C. 60, 111 F.2d 199, 204 [3]; State v. Falbo, Mo., 333 S.W.2d 279, 286 [7], and 23 C.J.S. Criminal Law § 836, p. 253.

■ Instruction No. 13 told the jury to consider the testimony as to the mental age, I.Q., or degree of mentality of the defendant only on the question of whether her statement was voluntary or involuntary. It told the jury, in effect, that they could not consider the testimony of Mr. Melton and Professor Bane to impair or destroy the effect of the confession even though the jury should believe that part or all of Exhibit "A" did not represent what Grace Deyo said or was capable of saying. In so doing, Instruction No. 13 took away from the jury its right to determine the weight, credibility and effect to be accorded to this testimony on this question of fact. This was error, for which this case must be reversed and remanded.

■ Appellant complains that the court improperly permitted cross-examination of Professor Bane concerning details of the psychological test administered to the defendant. It is proper, however, to permit the validity and weight of the opinion of an expert witness to be tested on cross-examination. State v. Grapper, Mo., 328 S.W.2d 633, 635 [4]. This was not error.

For the reasons assigned, the judgment is reversed and the cause remanded.

All of the Judges concur.