STATE of Missouri, Plaintiff-Respondent,

v.

Willis THOMAS, Defendant-Appellant.

No. 36544.

Missouri Court of Appeals, St. Louis District, Division Four.

March 16, 1976.

Richard A. Fredman, Law Offices of For-
riss D. Elliott, St. Louis, for defendant-ap-
pellant.

John C. Danforth, Atty. Gen., Preston
Dean, Charles L. Howard, Asst. Attys. Gen.,
Jefferson City, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

A jury convicted Willis Thomas of man-
slaughter. Committed to the department
of corrections for a period of 8 years, Thom-
as has appealed, claiming improper actions
by the Assistant Circuit Attorney, George
Peach, in cross-examining appellant's char-
acter witnesses and in commenting on ap-
pellant's prior misconduct. Appellant's as-
signments of error are well taken; the
judgment of conviction must be reversed.

Thomas shot and killed one Harris follow-
ing an argument. Thomas testified that
Harris brandished a gun during the argu-
ment; that shortly thereafter, during the
fatal encounter, Harris pointed the gun at
Thomas and attempted to shoot him, where-
upon Thomas jumped behind a door and
fired back, killing Harris.

Thomas called William Woods and Albert
Ross as character witnesses. Each testified
that Thomas' reputation was good. These
excerpts from the transcript contain the
improper cross-examination:

(The witness Woods)

"Q And you, in your knowledge of Mr.
Thomas, since '71, feel that his reputation is
a good one?

"A I sure do.

"Q Would your thoughts be the same,
sir, if I told you that in 1967 Mr. Thomas
shot another man and claimed self-defense?

"A I never knew anything like that.

"Q Would your opinion be the same if I
told you that was true?

"A I don't know.

"Q Well, I'm telling you it is true.
Now, what is your opinion?"

An objection by Thomas' counsel was
overruled. The prosecutor repeated the
question and Woods answered that it would
depend upon the circumstances; that his
opinion would probably be the same. Then
the prosecutor said, "How many times is he
going to have to shoot people before—."
Counsel's objection on the ground that the
question was argumentative was sustained.

(The witness Ross)

"Q Now Mr. Ross, if I told you that in
1967, before you met Mr. Thomas, that he
was arrested for shooting someone and
claiming self-defense, would that have any
effect on your opinion of him as a good,
mild-mannered person?

"A No, it would [not] have any effect.

"Q Why?

"A He has proven to be a decent person.

"Q And he did, in 1967, for which he
was arrested—

"A I don't know nothing about '67.

"Q How many times is he going to have
to shoot someone—"

Counsel began an objection which was
sustained by the court before it was fully
stated.

During closing argument prosecutor
George Peach, seeking to discount the good
character testimony on the basis that the
witnesses knew little of Thomas' back-
ground, referred to the fact that "he shot

somebody and was arrested for assault with intent to kill in 1967." An objection was overruled. Later the prosecutor argued: "He shot two people already and claimed self-defense and then this one—." Counsel objected that there was no evidence that he shot anyone else. This objection was sustained. The statement was stricken. The jury was instructed to disregard the statement. A request that the prosecutor be admonished was ignored.

At no time during the trial was there any evidence that in 1967 Thomas shot another man, or that he was arrested for assault with intent to kill or that he had previously claimed self-defense. There was evidence that in 1949 he was convicted of auto theft. That was the only evidence of any previous misconduct or brush with the law, but the prosecutor made no reference to this previous conviction.

■■ Reversible error was injected into the case by the conduct of the prosecutor. The transcript discloses a studied effort by the prosecutor to convince the jury, by the manner of framing questions and by stating in the presence of the jury as true events not established by evidence: that on one or two previous occasions Thomas shot other persons; that in 1967 he was arrested for assault with intent to kill and that he then claimed self-defense, the same as in the case on trial. The prosecutor made reference to these "facts" seven times during the trial. While the question of prejudice vel non should not depend solely upon the number of transgressions or offenses, *State v. Selle,* 367 S.W.2d 522, 531[26] (Mo.1963), the prosecutor's persistent and repeated reference to these unproved facts negatives the Attorney General's claim that he acted in good faith and that he was justified under the rule that to test the knowledge of character witnesses, the trustworthiness and accuracy of such knowledge, the basis for their judgment, their candor and credibility the prosecutor may inquire whether they

have heard rumors or reports of specific acts of misconduct (not remote or ancient) which would reflect upon defendant's character. *State v. Selle,* supra, 367 S.W.2d l. c. 529. This prosecutor did not ask these character witnesses whether they had heard *rumors or reports* of these matters.[1] Nor did he assume facts and call for any opinion on the basis of such assumption. He recited and represented these matters as actual facts, personally vouching for them, notwithstanding they were not in evidence and were "wholly outside of the case," in contravention of basic rules of cross-examination and in violation of his responsibility as a quasi-judicial officer to see that every defendant is accorded a fair trial. *State v. Selle,* supra, 367 S.W.2d l. c. 530. In *State v. Spencer,* 307 S.W.2d 440 (Mo.1957), in cross-examining a character witness the prosecutor asked whether she had been informed that defendant's father had been disbarred. Considering that the prosecutor knew the question to be improper and that once asked, whether answered or not, a prejudicial effect would be implanted in the minds of the jury, the Supreme Court held that the trial judge should have reprimanded the prosecutor, and for this and other matters reversed the judgment of conviction. "It has been clearly established that while a reputation witness may be asked whether he has heard of acts of the accused inconsistent with the reputation he has testified to, the State is expressly prohibited from framing the interrogatories to imply specific acts of misconduct or to imply that appellant was in fact guilty of said acts." *De Grate v. State,* 518 S.W.2d 821, 822 (Tex.Cr.App.1975). "A cross-examiner cannot state to a witness certain things as facts when there is no evidence in the record thereof and then ask his opinion thereon as to a defendant's general reputation as affected in part by the matters so stated. * * * The lay mind does not stop ordinarily to distinguish between accusation of crime and conviction thereof. As

---

1. "[I]t is the general rule, which we have no intention of modifying, that such cross-examination should refer to 'rumors' and 'reports' of fact of misconduct * * * rather than to the witness' personal knowledge of particular facts." *State v. Carroll,* 188 S.W.2d 22, 24 (Mo.1945).

there is no evidence in this record of a previous arrest of appellant * * * the statements to the witnesses in the question propounded on cross-examination that such were the facts were unfair and created around appellant an atmosphere of prejudice." *Pittman v. United States,* 42 F.2d 793, 797 (8th Cir. 1930). "The questions asked by the prosecuting attorney did not go to contradict any statement as to what [defendant's] reputation was then. He did not ask the witnesses if rumors were current which they had heard concerning defendant's misconduct, because it appears there were no such rumors at the time. * * * Under the pretext of testing the credibility and information of the witnesses he sought to bring before the jury the facts that the defendant had committed a number of very serious and abominable crimes * * * totally disconnected with the crime for which he was on trial. * * * This sort of cross-examination has been universally condemned. The prosecutor overstepped his privilege." *State v. Seay,* 282 Mo. 672, 222 S.W. 427, 429 (1920). See also *State v. Thurman,* 521 S.W.2d 773 (Mo.App. 1975).

Not content with impressing upon the jury by cross-examination that Thomas had previously shot one or more persons and had asserted self-defense to escape punishment, the prosecutor renewed the theme in final argument, not once but twice. In *State v. Cook,* 282 S.W.2d 533, 535 (Mo. 1955), the prosecutor said in closing argument, "He killed one man already." The Supreme Court held this highly prejudicial, outside the evidence and unwarranted, and ruled that the trial court should have taken some appropriate action, and counted on this as one of the errors for which the conviction was reversed.

The inevitable result of the prosecutor's transgressions in this case was to seriously prejudice appellant's position before the jury; to impart to the jury that he was guilty of other specific crimes and was engaging in a pattern of conduct of shooting people and then seeking exoneration by pleading self-defense. This denied appellant a fair trial. The verdict, thus tainted with prejudice, cannot stand.

 The conviction may not be upheld on the suggestion of the Attorney General that some of appellant's objections were sustained and no objections were made to other improprieties and therefore any error was not properly preserved for appellate review. The Supreme Court "frequently has been impelled to the conclusion that the asking of improper questions or the making of improper statements has injected poison and prejudice that could not be neutralized by the sustention of defendant's objections. In most of such cases, the transgressions have been persistent and repeated. [Citing twelve cases.]" *State v. Selle,* supra, 367 S.W.2d l. c. 530[23]. This is such a case.

Judgment reversed and cause remanded for a new trial.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.