STATE of Missouri, Respondent,

v.

Lavenia J. GOREE, Appellant.

No. 70112.

Supreme Court of Missouri,
En Banc.

Nov. 15, 1988.

Rehearing Denied Dec. 13, 1988.

Henry Robertson, Deborah Lambdin Stockhausen, St. Louis, for appellant.

William L. Webster, Atty. Gen., Byrona Kincanon, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

A jury convicted appellant, Lavenia J. Goree, of three counts of murder in the first degree. Section 565.020.1, RSMo 1986. The trial court sentenced her to three concurrent life sentences without possibility of probation or parole. She appeals, alleging trial court error in (1) failing to grant her motion waiving her right to a jury trial, (2) failing to declare a mistrial because of alleged prosecutorial misconduct, and (3) failing to declare a mistrial after the prosecutor improperly argued an adverse inference from appellant's failure to call a witness. The Court of Appeals, Eastern District, affirmed by memorandum order. Rule 30.25(b). We granted transfer to consider the issues raised by appellant. We have jurisdiction. Mo.Const. art. V, § 10. Affirmed.

## I.

The facts are uncontroverted. On July 17, 1985, appellant picked up her three daughters, Crystal, age seven; Danielle, age four; and Melissa, age twenty-one months, and Bryan Vent, her boyfriend's son, from the baby sitter and took them home. Shortly after entering the home, appellant went into her brother's bedroom, got his gun from the closet, and shot at her three children, fatally wounding all three. Bryan Vent was not harmed.

Appellant then dialed 911 and requested three ambulances and the police. When the police arrived, all three children were alive; each died shortly thereafter. Appellant admitted shooting her children to the police on the way to the police station and again in a taped confession later. At trial, appellant relied on a defense of not guilty by reason of a mental disease or defect.

## II.

### A.

Appellant's first point assigns error to the trial court's failure to permit her to waive her right to a jury trial. Appellant claims she has an absolute right to waive a jury under Mo.Const. art. I, § 22(a), and that the failure to sustain the motion was an abuse of discretion.

Prior to trial, appellant orally moved to waive her right to a jury trial and proceed to trial before the court. Appellant argued then and renews the argument here that a trial judge would be a more dispassionate and impartial trier of fact, given the emotionally charged nature of the case and appellant's reliance on the insanity defense. The trial judge overruled the motion, stating that due to the heavy penalty involved with first degree murder, he was reluctant to hear the case without a jury.

Mo.Const. art. I, § 22(a), reads:

That the right of trial by jury as heretofore enjoyed shall remain inviolate; ... and that in every criminal case any defendant may, *with the assent of the court,* waive a jury trial and submit the trial of such case to the court, whose finding shall have the force and effect of a verdict of a jury (emphasis added).

In *Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), the United States Supreme Court found that, although a defendant may waive the right to a jury trial under *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), there is "no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subjected to an impartial trial by jury—the very thing the constitution guarantees him." *Singer,* 380 U.S. at 36, 85 S.Ct. at 790.

In *State v. Taylor,* 391 S.W.2d 835 (Mo. 1965), this Court found that a black defendant had no absolute right to waive jury trial simply because of fear that a jury would give undue weight to the testimony of a white narcotics agent during a time of heightened racial tension. The Court stated:

Under the constitution and the rule both accused and court must assent and agree that the issues of fact in a criminal

case be determined by the court and not in the traditional form of trial by jury. The accused has no absolute right, either by constitution, statute, or court rule, to elect that he shall be tried by the court without a jury.

*Taylor*, 391 S.W.2d at 836. *See also State v. Johnson*, 530 S.W.2d 690 (Mo. banc 1975) (court upheld the trial court's denial of a motion for waiver of jury trial on basis of *Taylor* and *Singer*).

■ Appellant has no absolute right to waive a jury trial. By the unambiguous language of the constitution, the right is conditioned upon the assent of the court. Failure to sustain a motion to waive a jury trial is not an abuse of discretion. The point is denied.

### B.

Appellant's second point alleges error in the failure of the trial court to declare a mistrial *sua sponte* because of alleged prosecutorial misconduct. Appellant contends that the prosecutor asked questions of appellant's witnesses that were based upon facts which were not in evidence and which were untrue. Appellant claims that these questions were an attempt to discredit the information supplied by appellant in support of her insanity defense and were asked in bad faith. Specifically, appellant's contentions are twofold: First, she argues that the prosecutor should not have been allowed to state that appellant stole cosmetics *instead* of food when cross-examining Dr. Michael Armour, a psychologist testifying for appellant. Second, appellant urges that the State's statement to Ms. Kuela–Branz, a social worker testifying for appellant, that appellant did not complete any of the courses in which she enrolled at a community college was untrue.

### 1.

The pertinent portion of Dr. Armour's testimony follows:

Q. All right. When she told you that she had a shoplifting charge for stealing food to eat, you mentioned that in your report?

A. Yes, sir.

Q. Did you do that because you thought that was significant?

A. Well, mentioning it in my report, I mentioned it in the report because it's pretty much the standard procedure for us that we review the person's legal history. I think it's more significant in this case, because this lady—this later gets incorporated into her psychotic thinking that people somehow know about her previous shoplifting charge.

Q. Well, did it evoke sympathy from you?

MS. MARXKORS: I object to the relevancy, Your Honor.

THE COURT: No, overruled.

A. Could you be a little more specific?

Q. The fact that she told you that she was stealing food to eat, did that evoke sympathy?

A. I'm not sure, I really don't recall.

Q. Well, what if you had investigated that and found that she had stolen mascara and lipstick and eyeliner and make-up instead would that have made a difference?

A. In terms of sympathy or in terms of this charge having—

Q. The—the—in terms of you feeling, since eighty-five percent of this information is coming from her.

A. Uh-huh.

Q. In terms of the way you would feel about her.

A. You mean in terms of my final opinion?

Q. Yes.

MS. MARXKORS: Your Honor,—

A. No, sir I don't think so.

MS. MARXKORS: —lack of foundation.

THE COURT: No, he can answer and it's overruled. Go ahead. He said no and it can stand.

■ At trial, appellant objected to the question's lack of foundation. On appeal, however, appellant objects to the State's questions claiming they were asked in bad faith. To preserve error for appellate review, an objection must be made with suffi-

cient specificity to inform the trial court of the ground or reason for excluding evidence. *State v. Lang*, 515 S.W.2d 507, 511 (Mo.1974); *State v. Cannady*, 660 S.W.2d 33, 36 (Mo.App.1983). The objection at trial thus did not preserve a claim of prosecutorial bad faith for appellate review. We review for plain error and will reverse only if we find manifest injustice or a miscarriage of justice as a result of the alleged error. Rule 30.20.

█ Normally, an expert witness may be cross-examined regarding facts not in evidence to test his qualifications, skills and credibility, or to test the validity and weight of his opinion. *Myers v. Bi–State Development Agency*, 567 S.W.2d 638, 643 (Mo. banc 1978); *State v. Deyo*, 387 S.W.2d 561, 566 (Mo.1965). In the present case, the state's cross-examination was designed to test the credibility, validity, and weight of the expert's opinion by finding out what, if any, emotional impact the information that appellant gave Dr. Armour might have had on his opinion, and whether different "facts" would alter that opinion. On this basis, the question was not improper.

Moreover, the facts support the state's question. Appellant stated to Dr. Armour that she "stole some food from a Schnucks' store because she didn't have any food for her children." The items stolen from Schnucks[1] were predominantly cosmetic items; the only food items were a chocolate bar and a pound of sausage. Given the nature of the stolen items, it cannot be said that the state's cross-examination relied on facts which were either untrue or offered in bad faith.

### 2.

█ Appellant also alleges that certain questions asked of Ms. Kuela–Branz were improper. In reference to appellant's taking classes at Forest Park Community College, the State asked:

Q. Yourself? Okay. Are you aware that she, just a second. Are you aware

that she never got any grades for any of the courses that she took at Forest Park Community College? Did she in effect drop out of all of them?

A. I didn't ask to see report cards or—

Q. But at one time—point, she started on January 17th and she was concerned about something as early as January the 27th as it related to some courses there, is that correct?

A. Yes.

Q. *Would it surprise you greatly to learn that she just dropped out of all of them?*

A. No, because it was—it was a new thing for her to even go and register for school, to even interact in that setting (emphasis added).

Later defense counsel showed that the appellant did complete one course. Again defense counsel did not specifically object to the question. We again review for plain error.

█ Appellant relied on an insanity defense. Arguments of defense counsel characterized appellant's acts as the product of stress and her great love for and fear of losing her children. Statements that appellant did not complete her classes at the community college do not show that appellant was sane; instead her inability to finish the classes tends to show that she did not complete projects undertaken. The jury could infer that the stress appellant suffered caused this result. We fail to perceive any prejudicial error in the state's questions. The trial court did not err in failing to grant a mistrial.

### C.

Appellant's third point assigns error to the trial court's failure to declare a mistrial after the prosecutor argued an adverse inference from the failure of the defense to call a witness. Defense counsel originally endorsed Roy Anderson as a witness, but did not call him as a witness. The State

---

1. "The list read: one container of Wet Ones; a pound of Jimmy Dean sausage; an eight-ounce Hershey chocolate bar; one eyelash curler; one Lauren blush; one Almay foundation lotion; one Lip Quencher lipstick; one Bio–Clear makeup; two Maybelline eyebrow pencils; one package of Unisom; two bottles of St. Joseph's aspirin; one deck of Uno cards; one picture book.

called Anderson as a rebuttal witness. In his closing argument the prosecutor stated:

> You're the Judge of everything that you've heard and you cannot just point in on what one person says and what one or—person says. Take it as a whole, take it as a whole. Until Tuesday afternoon, Doc was listed as a defense witness.
>
> MS. MARXKORS: Your Honor, I'm going to object there's no evidence in that.
>
> THE COURT: I'm going to sustain that.
>
> MS. MARXKORS: And I ask the jury be instructed to disregard that.
>
> THE COURT: The jury will disregard that.
>
> MR. PEACH: Your Honor, the Court record will show that he was listed as a State's—defense witness.
>
> THE COURT: It is sustained as to that and the jury will disregard that.
>
> MR. PEACH: Everybody that came in here and—
>
> MS. MARXKORS: Your Honor, may we approach the bench?
>
> THE COURT: Yes.
>
> (Counsel approached the bench and the following proceedings were had:)
>
> MS. MARXKORS: Your Honor, I want to ask for a mistrial for that, for that comment by Mr. Peach and be instructed, he be instructed that it was not evidence and it's total the—a prosecutorial misconduct to make that reference.
>
> THE COURT: No, that's going to be denied. It doesn't go to that level. Denied.

In this case, appellant's opening statement referred to Roy Anderson as "another major source of her [appellant's] problem." Defense counsel then described Anderson as "the father of Melissa, the youngest child, and she [appellant] had a terrible fear of him...."

On cross-examination by defense counsel, Anderson admitted that the appellant had complained to the police about his, Anderson's, harassing her. The police contacted Anderson at work; after that meeting, Anderson agreed to stop harassing appellant. Anderson also testified that prior to the murders, appellant acted "squirrelly." Neither of these statements was inconsistent with appellant's theory of the case.

*State v. Collins*, 350 Mo. 291, 165 S.W.2d 647, 649 (1942), explained when a party may comment on an opposing party's failure to call a witness.

> In other words, a witness may be said to have been peculiarly "available" to one party to an action, so that upon that party's failure to have produced him in court an inference will arise that his testimony would have been unfavorable, when, because of such party's opportunity for knowledge of or control over the witness, or the community of interest between the two, or prior statements and declarations of the witness, it would be reasonably probable that the witness would have been called to the trial to testify for such party except for the fact that it was either known or feared that his testimony on the stand would have been damaging rather than favorable.

*Collins*, 165 S.W.2d at 649, *quoting Chavaries v. National Life & Accident Insurance Co.*, 110 S.W.2d 790, 794–95 (Mo.App. 1937).

■ An adverse inference can only be drawn where the witness is not equally available to both parties. *State v. Clark*, 711 S.W.2d 928, 932 (Mo.App.1986). Where the witness appears at trial this rule has no application. Any inferences the jury might draw regarding Anderson or his effect on appellant could be drawn from his testimony at trial.

■ Any argument regarding which party called a witness at trial is irrelevant. Appellant did not offer a specific objection to the circuit attorney's argument. The point is, therefore, not preserved for appellate review. We examine the point for plain error. Rule 30.20.

■ The trial court sustained appellant's objection and instructed the jury to disregard Mr. Peach's repeated efforts to make the argument. A trial court has

broad discretion in determining whether to grant a mistrial and will be reversed only for an abuse of that discretion. *State v. Raspberry,* 452 S.W.2d 169, 173 (Mo.1973); *State v. Grady,* 691 S.W.2d 301, 303–4 (Mo. App.1985). We conclude that the trial court did not abuse its discretion in refusing to sustain the motion for a mistrial and that appellant suffered no prejudice thereby. The point is denied.

### III.

The judgment of the trial court is affirmed.

DONNELLY, RENDLEN and HIGGINS, JJ., concur.

BILLINGS, C.J., concurs in separate opinion filed.

BLACKMAR, J., dissents in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

BILLINGS, Chief Justice, concurring.

I concur fully in the principal opinion. I write to take issue with the dissenting opinion of Welliver, J.

The dissent first criticizes the prosecuting attorney for filing the particular charges—authorized by law and supported by the evidence submitted. Next, the dissent condemns the prosecuting attorney for personally prosecuting the case, rather than turning it over to a subordinate—either course authorized by law. And, the dissent demeans the prosecuting attorney for the manner in which the case was presented—although asserting no legal error calling for reversal.

Finally, is the dissent's censure of a learned, highly respected, and experienced (nearly 14 years) trial judge for permitting a jury to resolve the issues and temper justice with mercy (life without probation or parole, rather than the death penalty), and, further, in failing to "lean over backwards to see that appellant had the fairest jury trial possible."

I suggest the trial court and this Court fulfill their constitutional and lawful duties when the law is followed and upheld—rather than conjuring up reversible error where none exists.

BLACKMAR, Judge, dissenting.

I sympathize with the sentiments expressed in Judge Welliver's opinion. It is often necessary for appellate judges, in the line of duty, to express disagreement with circuit judges and prosecutors. I believe that the trial judge should have undertaken the bench trial as requested.

It is the responsibility of a prosecutor, as an officer of the court, to see that the defendant is afforded a fair trial. *State v. Selle,* 367 S.W.2d 522, 530 (Mo.1963) (Prosecutor has duty to refrain from conduct calculated to engender prejudice or excite passion against defendant). *See also, State v. Tiedt,* 357 Mo. 115, 206 S.W.2d 524 (1947).

The majority opinion finds no prejudicial error in the prosecutor's conduct. Here the prosecutor persisted in injecting possibly prejudicial material about defense counsel's failure to call an endorsed witness, after objection was sustained. The transcript does not indicate that his comments were not heard by the jury. This same prosecutor was held to have acted in bad faith, resulting in reversible error, for similar misconduct in *State v. Thomas,* 535 S.W.2d 138 (Mo.App.1976). In that case, the court found "a studied effort by the prosecutor to convince the jury, by the manner of framing questions and by stating in the presence of the jury as true events not established by evidence...." *Id.* at 140. Apparently the lecture went unheeded.

There is no way of knowing the cumulative effect his misconduct in the present case had on the jury, and I too believe that the circumstances of this case require our special consideration. In this case, where the state's evidence of sanity rested solely on the prosecutor's cross-examination of appellant's expert witnesses and the statu-

tory presumption of sanity[1], I choose to err on the side of appellant and would remand for a new trial.

WELLIVER, Judge, dissenting.

I respectfully dissent.

This case was transferred for review by this Court after the Court of Appeals entered its memorandum opinion by order, Rule 84.16(b), and Simeone, Senior Judge, filed a concurring opinion as follows:

> I concur, but make one additional comment:

> It may seem strange to enter a summary order of affirmance in this case involving three convictions for first degree murder. But the facts and circumstances are so bizarre and sad that there is no need to detail the tragedies. It is clear that there is no error, prejudicial or otherwise. Although the appellant was found criminally guilty of the offenses, there is no doubt that she is in need of professional counseling and psychiatric help. I would respectfully urge the person in charge of the correctional institution to probe the facts involved and the personality of the defendant and utilize the provisions of § 552.050, RSMo 1986.

As much as I wish the statutes suggested by Judge Simeone could take care of the problem, they cannot. Section 552.050, RSMo 1986, provides for a 90–day commitment period in a mental hospital if the person in charge of the correctional institution has reasonable cause to believe that the inmate needs care in a mental hospital. At the expiration of the ninety-day commitment period, the inmate may be detained and treated involuntarily for up to an additional year under § 632.355 and 632.360, RSMo 1986. Section 632.360 provides for successive one-year detention periods as permissible to the same procedures used in the initial one-year detention period.

The statutes suggested by Judge Simeone can only put appellant in a revolving door between mental treatment and imprisonment without possibility of probation or parole. Life commitment for mental patients is not treatment. Society abandoned and repudiated the warehousing of the mentally ill over twenty years ago.

It is impossible to look at this file without questioning why a prosecuting attorney would file first degree murder charges in this bizarre case. I can only conclude that the exercise of prosecutorial discretion is as bizarre as the facts of the case itself. You cannot help but ask why the chief prosecutor from such a large office would personally conduct this trial and do the things he did to get these three first degree murder convictions, when the newest, youngest and most inexperienced assistant in his office could have gotten three ordinary life terms either by plea or trial. No prosecutor was ever handed three more lead pipe convictions.

Yes, I am aware that the law is well established that the trial judge had discretion in ruling on appellant's motion for a trial by jury. However, if the judge chose to force appellant to trial before a jury and thereby relieve himself of the responsibility of deciding her rights, then I respectfully submit that the bizarre facts of this case cast upon that judge and this Court a very special responsibility to lean over backwards to see that appellant had the fairest jury trial possible. Even a reading of the principal opinion leaves no doubt that the prosecutor fudged at every turn during the course of this trial.

I concede that in other and less bizarre circumstances, perhaps each individual point could have been ruled as ruled below and in the principal opinion. However, where this appellant and her counsel sought to place her at the mercy of the

---

1. Section 552.030, RSMo 1986, provides in part:
   6. All persons are presumed to be free from mental disease or defect.... The issue ... is one for the trier of fact to decide upon the introduction of substantial evidence of lack of such responsibility.... Upon the introduction of substantial evidence of lack of such responsibility, the presumption shall not disappear and shall alone be sufficient to take that issue to the trier of fact....
   I have reservations about the constitutional validity of this provision, in a case in which the evidence of insanity is uncontradicted and overwhelming, but no constitutional issue was argued to us.

trial judge below because of fears of the way things happened in the trial, both that trial judge and we have an obligation to assure her the fairest trial possible. The accumulated error discovered by the principal opinion cries out for relief. The cause should be remanded for a new trial. Only by so doing can we assure that this bizarre case can fairly be processed in accordance with our criminal and mental health treatment laws.