## THE STATE v. EMMET KINNAMON, Appellant.

Division Two, May 28, 1926.

1. **APPEAL: Motion for New Trial: Filed in Vacation: Corrected Transcript: Reinstatement.**  Having declined to consider the bill of exceptions because it appeared from the record that the motion for a new trial was filed in vacation, and no error appearing in the record proper, the judgment was, for these reasons, affirmed, and it being subsequently shown by a corrected transcript that the motion was seasonably filed within four days after verdict, during a recess of the court, the court, upon its own motion, in furtherance of justice, will grant a rehearing.

2. **MURDER: Failure of Evidence.**  Evidence that a young man was prompted, incited and even goaded by defendant to enter the restaurant of deceased and shoot him down, with robbery as the motive, is a fact from which the jury may find defendant guilty of the murder, although he was not actually present when the homicide and robbery were committed.

State v. Kinnamon.

3. ——: **Conspiracy.** It is necessary to show a conspiracy between defendant and the young man who shot deceased in the absence of defendant, but a prima-facie showing is sufficient. Thereafter the question of its actual existence is for the jury. A conspiracy to commit murder, with robbery as the motive, may be shown by circumstantial evidence alone, and in the reception of such evidence great latitude is allowed.

4. ——: ——: **Facts Occurring after Crime.** Where the young man who actually shot and robbed deceased has entered a plea of guilty and been sentenced, and he is used as a witness by the State to prove a conspiracy between him and defendant to commit the crime, declarations made and acts done by him after the purpose of the conspiracy were accomplished, are objectionable; but where he answers questions relating to such declarations and acts in the negative, and makes no statement and testifies to no act tending to connect defendant with the crime, the questions eliciting them are harmless.

5. ——: ——: **Hearsay: Exclusion: Rebuke.** Conceding that it was prejudicial to ask a witness if he had had a conversation with the young man who did the shooting in the absence of defendant, with reference to the participation by defendant in the robbery which resulted in the killing of deceased, yet if the trial court sustained an objection that the question called for hearsay and was improper, and was not asked to rebuke counsel for asking the question, and therefore could have done nothing more, there was no reversible error.

6. **ARGUMENT TO JURY: Motion for New Trial.** Alleged prejudicial remarks of the prosecuting attorney in his argument to the jury should be called to the attention of the trial court in the motion for a new trial, and if that is not done they are not for consideration on appeal.

Corpus Juris-Cyc. References: Conspiracy, 12 C. J., Section 226, p. 633, n. 47; p. 634, n. 49. Criminal Law, 16 C. J., Section 1037, p. 545, n. 73; Section 1566, p. 762, n. 31; Section 1570, p. 766, n. 78; Section 1590, p. 779, n. 98; Section 2290, p. 929, n. 86; Section 2291, p. 930, n. 93; Section 2294, p. 932, n. 17; 17 C. J., Section 3352, p. 91, n. 79; Section 3537, p. 200, n. 33 New; Section 3654, p. 308, n. 66; Section 3655, p. 309, n. 90. Homicide, 29 C. J., Section 40, p. 1068, n. 9; p. 1069, n. 12; 30 C. J., Section 548, p. 302, n. 11, 12, 16. Witnesses, 40 Cyc., p. 2476, n. 33.

Appeal from Cooper Circuit Court.—*Hon. Henry J. Westhues*, Judge.

AFFIRMED.

*Elmer E. Martin* and *Dumm & Cook* for appellant.

(1) The evidence is insufficient to support the verdict and to justify the conviction of the defendant. The demurrer offered and requested by the defendant at the close of the State's case should have been sustained. State v. Frisby, 204 S. W. 3; State v. Larkin & Harris, 250 Mo. 234; State v. Crabtree, 170 Mo. 642; State v. Gordon, 199 Mo. 561; State v. King, 174 Mo. 647; State v. Scott, 177 Mo. 665; State v. Francis, 199 Mo. 671; State v. Johnson, 209 Mo. 346; State v. Bass, 251 Mo. 107; State v. Tracy, 225 S. W. 1009; State v. Young, 237 Mo. 170; State v. DeWitt & Jones, 191 Mo. 51. (2) The court erred in permitting the witness Gray, defendant's alleged co-conspirator, to testify as to declarations made and acts done by him after the purpose of the alleged conspiracy had been accomplished, and in permitting the prosecuting attorney to ask said witness if he had not, at the time he pleaded guilty to the charge contained in the information, made certain statements and declarations connecting this defendant with the crime charged. State v. Frisby, 204 S. W. 4; State v. Forshee, 199 Mo. 144; State v. Schaeffer, 172 Mo. 335; State v. Flanders, 118 Mo. 227; 16 C. J. 656, 660; State v. Condit, 270 S. W. 286. (3) The State having called to the stand the witness Gray, it was error for the trial court to permit the prosecuting attorney, over the repeated objections of the defendant, to cross-examine said witness, the cross-examination being, in effect, an attempt by the State to impeach this witness before the jury. Having called Gray, defendant's alleged co-conspirator, as a witness and thereby vouched for him before the jury, the State had no right to attempt to impeach him. State v. Bowen, 263 Mo. 279; State v. Burks, 132 Mo. 373; 40 Cyc. 2559, 2560; State v. Hulbert, 253 S. W. 766; State v. Patton, 255 Mo. 245; State v. Drummins, 274 Mo. 647. (4) The court erred in permitting the prosecuting attorney, in his closing argument to the jury, over the objections and exceptions of the defendant, to refer to the failure of

the defendant to testify in his own behalf.  Sec. 4037, R. S. 1919; State v. Drummins, 274 Mo. 632.

Robert W. Otto, Attorney-General, and W. F. Frank, Assistant Attorney-General, for respondent.

(1)  This case is here on the record proper.  There is no bill of exceptions here because:  (a) there is no record entry showing the filing of a bill of exceptions; (b)  The bill of exceptions is not certified by the clerk. Appended to the bill below the signature of the judge is a certificate of the clerk, stating that the bill was filed on August 25, 1925.  The record proper is silent on this point.  Ricketts v. Hart, 150 Mo. 68; State v. Little, 248 S. W. 926; Bower v. Daniel, 198 Mo. 317; R. S. 1919, sec. 4103; State v. Riley, 228 Mo. 433.  (2)  Appellant's demurrer to the evidence was properly overruled.  Evidence of a conspiracy, in the first instance, need only show, prima-facie, that the conspiracy existed.  Thereafter the question of actual existence of a conspiracy is a question for the jury to determine.  State v. Roberts, 201 Mo. 728; State v. Kolafa, 291 Mo. 347; State v. Bersch, 276 Mo. 414; State v. Hill, 273 Mo. 341; State v. Fields, 234 Mo. 627.  The court did not err in permitting the witness Gray, appellant's alleged co-conspirator, to testify as to declarations made and acts done by him after the purpose of the alleged conspiracy had ended, because: (a)  witness Gray did not testify to any such declarations made or acts done by him.  (b)  The facts and circumstances in evidence tend to show prima-facie a conspiracy.  This being true, such evidence would be admissible, and the actual existence of such conspiracy would then be a question for the jury to determine.  State v. Shout, 263 Mo. 374; State v. Bersch, 276 Mo. 414.  (3) Appellant's complaint that the court erred in permitting the State over the objection of the defendant to cross-examine witness Gray, is also without merit, because (a) the cross-examination of which appellant complains was an effort by the prosecutor to show by the witness

that he had made statements which directly contradicted his testimony given at the trial. The witness denied making any such statements. The witness's answers to such questions were favorable to defendant, and if error, in view of the answer, it was harmless. Kuenzel v. St. Louis, 278 Mo. 282; State v. Sloan, 274 S. W. 739. The witness was evasive and hostile to the State and leading questions, even cross-examination, was proper. The examination of a witness is always a matter largely in the discretion of the trial court. Landis v. Hawkins, 234 S. W. 827. (b) The State's offer to prove by witnesses Peters and Crawford that witness Gray had made statements which contradicted his testimony was excluded by the court; therefore appellant has no ground to complain.

HIGBEE, C.—An opinion was filed in this cause at the last term in which we declined to consider the bill of exceptions for the reason that it appeared from the record that the motion for new trial was filed in vacation, and, finding no error in the record, the judgment of conviction was affirmed. It being subsequently shown by a corrected transcript that the motion was seasonably filed within four days after verdict, during a recess of the court (Maloney v. Mo. Pac. Ry. Co., 122 Mo. 106, 114, 26 S. W. 702; Shewalter v. McGrew, 60 Mo. App. 288, 289; Beckman v. Phoenix Ins. Co., 49 Mo. App. 604), the court of its own motion, in furtherance of justice, granted a rehearing.

The appellant and William Gray were charged with murder in the first degree for shooting and killing John Tritsch on November 12, 1923, in Cole County; Gray being charged as principal, and Kinnamon as an accessory before the fact. Gray entered a plea of guilty and was sentenced to imprisonment for life. Kinnamon was awarded a change of venue to Cooper County, where he was tried to a jury, found guilty and sentenced to life imprisonment, from which he appealed.

John Tritsch, the deceased, conducted a restaurant on West Main Street in Jefferson City, about three blocks

west of the State Capitol, and across the street from the roundhouse of the Missouri Pacific Railroad Company, and was patronized by railroad employees. On pay days Tritsch cashed their pay checks, and kept money on hand for that purpose. November 12th was pay day, and Tritsch had cashed a number of these checks. At·six P. M. the employees at the roundhouse had twenty minutes for their suppers at this restaurant. On the evening of November 12th, these employees having eaten and left the restaurant, William Gray, with a revolver in his hand and a handkerchief over the lower part of .his face, entered the restaurant, saying, ''Stick 'em up.'' Tritsch, it seems, did not take this seriously, but said, ''If that is the way you are going to play, I can play too.'' Gray then shot Tritsch in the side, inflicting a wound from which Tritsch died November 14th. Gray took the money out of the cash register and left the restaurant. He was arrested that evening with the revolver in his pocket and $86.25 in cash on his person.

Kinnamon had lived for a short time in a tent at Osage City, a village eight miles east of Jefferson City, and followed the occupation of fishing. A few days prior to, and again on the afternoon of the day of the homicide, he and Gray had been seen together at Kinnamon's camp at Osage City. Kinnamon was in Jefferson City on·the afternoon and evening of November 12th, and was seen by several persons in the vicinity of the restaurant after the homicide. He was arrested the following morning at Osage City. Gray, a boy of eighteen, came to Jefferson City in October, 1923 and was a comparative stranger. Kinnamon was little known. We quote from the statement of the Attorney-General:

''J. D. Coffelt testified that he resided at 221 East Main Street, Jefferson City, and boarded at the Tritsch restaurant; that on the evening of the killing he had just eaten supper, came out of the restaurant and started to town; that about one-half block from the restaurant he observed two men talking together. One answered to the name of Gray and one answered to the name of Kin-

namon. As he got up within ten feet of them, one said to the other, 'That won't work,' and the other one said, 'Work, God damn it, it's got to work.'

"On cross-examination, this same witness said: Q. Which one said 'It can't be done?' A. Gray. Q. What did the other man say? A. He said, 'It won't work? Why God damn it, it's got to work.' Q. Then what did Gray say? A. He said, 'It will get us both in bad.' The Witness: 'Gray said something, but I didn't hear what was said, and then Kinnamon, he called him a yaller son of a bitch.'

"This witness further testified: Q. You recognized them at the preliminary that morning as being the two men you saw the night before? A. Yes, sir.

"This witness further testified that immediately after hearing this conversation he went on to the fire station, which was about five blocks, and when he arrived there he heard of the shooting.

"John Kremer testified that he was living in Osage City on November 12, 1923, and had lived there for several years; that a few days prior to the killing, he saw appellant and William Gray together in Osage City. 'I met appellant in Osage City the next morning after the killing and he said to me, "This boy took my smoker and went up there to Jefferson City and pulled off a stunt." He made this statement to me about eight or nine o'clock the next morning.'

"Witness Guental testified as follows: I am night watch at the sand plant and go on duty at five o'clock in the evening and work until six o'clock in the morning. The sand plant is about one block north of the Tritsch restaurant. I had a .25 Colt's automatic pistol I kept in a drawer in the desk in the office at the sand plant. Appellant Kinnamon had been in the office several times and saw this pistol lying on the desk. I saw Kinnamon about five o'clock in the afternoon on the day of the killing, about one hundred yards from where I work, and saw him at the plant at seven o'clock when the policemen were there. He slept in the office at the sand plant

until about twelve o'clock on the night of the killing, then got up and said he was going home. I looked for my revolver about midnight on the day of the killing and it was gone. Q. I hand you 'State's Exhibit A,' being a Colt revolver, and ask you to state if that looks like the Colt revolver you had there in the sand plant office. A. Yes, sir, it looks like it.

"Geo. F. Wallau testified that he and his father were owners of the sand plant. He identified the Colt revolver that was taken from Gray and introduced in evidence at the trial and testified that it was the revolver that the night watch had at the sand plant. He further testified that he furnished this revolver to the night watch and that he knew by the serial number that it was the same revolver. He further testified that he had seen appellant around the sand plant.

"Albert Schatzer testified that he, with other officers, arrested appellant. 'We found some clothes at appellant's camp that Bill Brennan said belonged to Gray.'

"William Gray testified that he took the revolver from the office at the sand plant and afterward shot Tritsch with it. He denied that Kinnamon had anything to do with the killing. Gray further testified that he was with Kinnamon at his camp near Osage City about ten o'clock A. M. on the day he shot Tritsch."

I. It is insisted that, since it is conceded Kinnemon was not present at the homicide, there is no substantial evidence to support the verdict. Learned counsel say:

**Sufficient Evidence.**

"We believe that the sum total of the evidence tending in the remotest degree to connect this defendant with crime is as follows: That a few days prior to November 12, 1923, the defendant Kinnamon, who was camping and fishing near Osage City, was seen with William Gray on the street in Osage City; that, on the next morning, the defendant said to John A. Kremer, at Osage City, 'This boy took my smoker and went up there to Jefferson City and pulled off a stunt;' that Kinnamon

was a friend of Guental, the night watchman at the sand plant, and had frequently visited him there; that Kinnamon was in Jefferson City and in the vicinity of the sand plant at five o'clock in the afternoon of the said day the crime was committed, and again at seven and eight o'clock in the evening of that day; that, about six o'clock in the evening of said day, the witness Coffelt observed two men, whom he afterwards identified as Gray and Kinnamon, engaged in conversation on a street corer near the Tritsch restaurant; that Gray said, 'It won't work,' and that Kinnamon said, 'It won't work.' ''

It is true, as contended by counsel, that a strong suspicion of guilt is not sufficient to support a conviction for a crime in this State. The appellant is charged with being an accessory before the fact. The weight and credibility of the evidence is for the jury, if there is substantial evidence of guilt, but whether there is sufficient evidence of guilt to submit the case to the jury is a question of law for the court. [State v. Frisby, 204 S. W. 3.] In that case the conviction was reversed because the record showed that the defendant ''was convicted solely upon the hearsay evidence of divers witnesses who told what her alleged accomplice had related in certain confessions and had sworn upon his preliminary hearing before a justice of the peace.''

Here there is substantial evidence that just a few minutes before Tritsch was shot down in his restaurant by William Gray, Gray and Kinnamon were seen within half a block of the restaurant engaged in earnest conversation. This was pay day, and it was well known that Tritsch kept money in his restaurant on such days with which to cash his boarders' checks. In that conversation Gray said, ''It can't be done; that won't work.'' Kinnamon said, ''It won't work? Why, God damn it, it's got to work.'' Gray said, ''It will get us both in bad.'' The witness did not hear what Gray further said, but Kinnamon called Gray a ''yaller s— o— b—.''

The evidence is clear that Kinnamon urged Gray to do some act that in Gray's opinion ''would get us both

in bad," and that Gray went at once into the restaurant and shot Tritsch down and stole the money from the cash register and fled towards Osage City. That Gray was prompted, incited and even goaded into the commission of this felony by Kinnamon with robbery for the motive, is a fact which the jury were warranted in finding from the evidence. The facts and circumstances in evidence tended strongly to prove a conspiracy between Gray and Kinnamon. It is true that it was necessary to show that a conspiracy existed, but a prima-facie showing is sufficient. Thereafter the question of actual existence of such conspiracy is for the consideration of the jury. That there was no direct or positive evidence may be true, but direct proof was not indispensable. A conspiracy may be shown by circumstantial evidence alone and in the reception of such evidence great latitude is allowed. [State v. Roberts, 201 Mo. 702, 728, 100 S. W. 84; State v. Kolafa, 291 Mo. 340, 347, 236 S. W. 302, and cases cited.] "The nature of the crime usually makes it susceptible of no other proof." See 12 Corpus Juris, 634, citing, *inter alia,* Radin v. United States, 189 Fed. 568, 570, where it is said: "Conspirators do not go out upon the public highways and proclaim their intentions. They accomplish their purpose by dark and sinister methods and must be judged by their acts." See other cases cited in Note 49. The demurrer to the evidence was properly overruled.

II.   Gray was offered as a witness by the State at the trial. His competency as a witness is not questioned. [Sec. 5439, R. S. 1919; State v. Hill, 273 Mo. 329, 201 S. W. 58.] It is insisted, however, that the court erred in permitting Gray, the alleged conspirator, to testify as to declarations made and acts done by him after the purpose of the alleged conspiracy had been accomplished, and in permitting the prosecuting attorney to ask said witness if he had not at the time he pleaded guilty to the charge contained in the information made certain statements and declarations connecting this defendant with the crime charged.

The record does not support these contentions. The learned trial court ruled that Gray was an unwilling witness and that the prosecuting attorney might cross examine him. There was no error in so ruling; that was a matter largely within the discretion of the court. Gray testified that he stole the revolver from the sand house about four P. M. on the day he shot Tritsch; that he "stuck up" the restaurant and shot Tritsch about six-thirty P. M. and robbed the cash register, and then went down the railroad track toward Osage City; that he had the money and the pistol in his pocket; that he was arrested at the entrance to the railroad tunnel four miles east of Jefferson City, and the pistol and money were taken from him and that he was taken back to Jefferson City. He was asked if at the time he entered his plea of guilty he said that Kinnamon gave him the gun. This was objected to as *immaterial* and the question was not answered. The witness was asked if he did not also say at that time that he and Kinnamon both talked about "sticking it up" together. This the witness expressly denied. He testified that Kinnamon did not tell him what to do. His testimony tended to exonerate Kinnamon from complicity in the commission of the crime. While some of the questions propounded to the witness were objectionable for the reason assigned by appellant, they were answered in the negative. Gray testified to no act or statement made by him after he shot Tritsch tending to connect or implicate Kinnamon in the commission of the crime. The questions and answers were, therefore, harmless. [Kuenzel v. St. Louis, 278 Mo. 277, 282, 212 S. W. 876.]

III. J. S. Crawford, warden of the penitentiary, was sworn as a witness for the State and asked if he had a conversation with the witness Gray, then confined in the penitentiary, with reference to Kinnamon's participation in this robbery which resulted in the killing of John Tritsch. An objection that this was improper and called for hearsay evidence was sustained by the court. It is

claimed that this was highly prejudicial. It may be conceded that it was, and that the prosecuting attorney should have been rebuked for asking the question. But the court sustained the objection and was not asked to rebuke counsel, and could have done nothing more. There is no merit in the complaint.

IV. Appellant complains of prejudicial remarks of the prosecuting attorney in his closing argument to the jury. The attention of the court was not called to this in the motion for new trial and it is not before us for consideration.

We have considered all the alleged errors discussed in the brief filed by learned counsel for the appellant. We have carefully read and considered the record and find no error therein prejudicial to the appellant. The case was submitted to the jury on instructions upon all questions of law arising in the case necessary for their information in giving their verdict. The judgment is, therefore, affirmed. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion by HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.