STATE of Missouri, Respondent,

v.

Lewis Richard KEY, Appellant.

No. 51760.

Supreme Court of Missouri,
Division No. 2.

Feb. 13, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Dennis J. Quillin, Sp. Asst. Atty. Gen., Clayton, for respondent.

William Brandecker, Ronald E. Smull, Columbia, for appellant.

BARRETT, Commissioner.

Upon an indictment charging that Lewis Richard Key by means of a dangerous and deadly weapon, a pistol, held up and robbed Evelyn Wiehardt of $512.75, the property of McCutcheon Supermarket in Fayette, a jury returned a verdict of guilty and fixed his punishment at five years' imprisonment.

Appellant's counsel have briefed and argued six separate assignments of error and while three of the points have to do with the giving of instructions, they relate to and may be considered with the principal claim that the court should have directed an acquittal because "there was no substantial evidence of a conspiracy between appellant and William Thornton Harris" who, admittedly, "had the gun on" Mrs. Wiehardt and "asked me if I wanted to live and I told him to take the stuff."

The state established these circumstances: On February 6, 1965, "Corky" Quinley, the manager, and Mrs. Wiehardt, a checker, closed McCutcheon's Supermarket. It was about 9:30, "Corky" put the day's receipts in a bag and proceeded to his parked car intending to put the bag in a night depository. But as he approached his car he saw "Someone laying on the floorboard in the back seat" and so he walked over to Mrs. Wiehardt's car before she drove away and put the money bag in her automobile and started back to the front door of the store to call for help. Before he could get to the store door a man, he "could tell he was colored," had gotten out of his car and "with his arm stretched out with his pistol in his hand" said "Stop right there." Instead of stopping "Corky" ran to a nearby laundromat to call the sheriff. And as indicated, Mrs. Wiehardt said that when "Corky" "went off and the first thing I knew he was right on me." The man was Harris, as a boy he had lived in Fayette, and Mrs. Wiehardt recognized him. Harris grabbed her bag and could not immediately find the store's money bag but when he pointed the gun and asked if she wanted to live she told him "to take the stuff" and told him where it was. He got the bag and "ran right straight for the south corner of the (store) building" and, according to both "Corky" and Mrs. Wiehardt, in seconds, a white and green automobile "came up Lucky Street" from the side of the store building and "took him away" at a "very fast" speed and they were unable to get a license number or see who or how many were in the automobile.

But officers were alerted and just outside Columbia, 26 miles from Fayette, the appellant Key, age 23, driving his green and white 1954 Chevrolet was confronted with police-car roadblocks from both front and rear. A Columbia policeman described the encounter, "the driver (Key) got out and came back to the patrol car. * * * I asked him if it was his car and I asked him if he was by himself and he said yes." But when the policeman turned his spotlight on he saw someone else moving in Key's automobile. Other police officers arrived and found Jackie Harris and Larry Lewis "lying or squatting on the floor." Searching Harris, the officers found a loaded 22 caliber Ruger pistol in his raincoat pocket. Harris refused to give his name. Also in the back of Key's automobile the officers found an empty lady's red purse (Mrs. Wiehardt's) with some McCutcheon coupons in it and a McCutcheon money bag on the back seat. The bag contained $512.-75 in currency and silver and $2422.75 in checks. One of the officers said that Key had been drinking, it was possible that he was intoxicated but the officer said, "He wasn't incapacitated." The Howard County sheriff arrived shortly, identified Harris and talked to Key who said that the three of them had been in Fayette and "out in this part of town called New Addition" but he said that he had been asleep and that Harris had driven his Chevrolet to Columbia. Key had no knowledge of the money bag or the pistol and did not know that there had been a robbery in Fayette.

Key, Harris and Lewis all testified. They had been drinking during the afternoon in Jefferson City and Columbia and Lewis solicited Key to take Harris to Fayette to see Harris' sick baby. Harris bought gasoline just outside Columbia for Key's 1954 green and white Chevrolet and Key and Lewis bought more gin and wine and Key "took them over to Fayette." Harris' wife lived in Columbia, his mother in Fayette but when they arrived instead of going

to see the sick baby went out to "New Addition" and "went in the joint" where they drank beer and danced. Lewis returned to the automobile and was asleep in the back seat and Keys says that he went out, "laid in the front seat" and went to sleep. In the meantime Key had told Harris that he could drive the automobile to see the baby. In any event Key and Lewis went to sleep in the automobile and did not wake up until just outside Columbia. They saw no gun, had not talked about a robbery and didn't know that Harris was thinking about it. Harris, serving eighteen years for robbery, was a state's witness, most questions he refused to answer for the reason "it might incriminate me." He said that he rode in Key's automobile to Columbia and that *there was no discussion with Key about robbing the supermarket.*

█ It is in this background that Key insists that a verdict should have been directed because, he says, there was no evidence of a conspiracy between him and Harris and that the state is bound by Harris' testimony that there was no discussion of a robbery. And in this connection, since there was no proof, it was error to instruct on the subject of conspiracy and other instructions permitted a finding of guilt without requiring the jury to find a conspiracy. And still further in this connection it is claimed that the court erred in giving Instruction 11 on circumstantial evidence, particularly in that it conflicts with other instructions and only required that the circumstantial facts *"should"* be consistent rather than that they *"must"* be found consistent. Thus in one way and another the appellant does not challenge the sufficiency of the evidence to the substantive offense of robbery with a dangerous and deadly weapon, he challenges proof of his connection with the offense for lack of sufficently probative evidence and proof of a conspiracy.

█ In this connection the burglary and liquor cases relied on by the appellant are helpful only insofar as they state and illus-

trate the general rules relating to circumstantial evidence and require the proof to show more than mere opportunity to commit the offense and create more than a suspicion of actual connection and guilt. State v. Rogers, Mo., 380 S.W.2d 398. But even in this connection, as the first Whitaker case (State v. Whitaker, Mo., 275 S.W.2d 316) illustrates, a conspiracy as with any other fact may be shown by circumstantial evidence. And here, unlike in the second Whitaker case (State v. Whitaker, Mo., 275 S.W.2d 322), there was deception on Key's part as to the presence of Lewis and Harris, the admitted robber in his, Key's, automobile. And unlike State v. Watson, Mo., 350 S.W.2d 763, while it is 26 miles from Fayette to the outskirts of Columbia, Key was in his own automobile with Harris and Lewis and the money bag and the inferences are stronger than his mere presence in an automobile stolen by another. It is true that a party, here the state, vouches for the credibility of its evidence and witnesses and if adverse is binding unless contradicted by other evidence. "In any event, it is clear that a party is not bound or concluded by the testimony of his witnesses in the sense that he may not present evidence in contradiction thereof; a party may prove his claim or defense by any proper evidence even though such evidence conflicts with the testimony given by his witness." 32A C.J.S. Evidence § 1040(1), p. 765; State v. Jones, 363 Mo. 998, 1005, 255 S.W.2d 801, 804. For example in State v. Rowland, 174 Mo. 373, 74 S.W. 622, a robbery case, the prosecuting witness testified that the defendant "had nothing to do with robbing him." In the first place the defendant Rowland first denied and then had to admit that he was with the prosecuting witness when he was knocked down and robbed. But, as to the prosecuting witness the court said that the state was not concluded by his statement and pointing to incriminating evidence said, "That there were two of them concerned in the robbery is clear, and that defendant was one of them we are fully satisfied." And here the jury in reasoning upon the evidence, and thus finding some

facts (Thayer, Preliminary Treatise On Evidence, p. 194), must have drawn the inference that there was more than an inconsistency in Key's and Lewis' claiming to have been drunk and passed out during the entire time Harris, on foot, was engaged in holding up and robbing "Corky" Quinley and Mrs. Wiehardt. Harris was then on foot, there was no one else there, Quinley and Mrs. Wiehardt on the one hand, Harris, Lewis and Key on the other hand even though Key and Lewis were in the automobile. And after Harris had pointed the gun and secured the money bag and ran to the south, the automobile, Key's green and white Chevrolet, came up Lucky Street "fast" and in seconds "took him away." Someone had to be driving the Chevrolet and Key and Lewis were the only persons in it.

And from these particular facts and upon all the attendant circumstances of this record the jury could reasonably find a concert of action or a conspiracy, so to speak, between Harris and Key. State v. Kinnamon, 314 Mo. 662, 671, 285 S.W. 62, 64. Thus in this case, unlike State v. Carr, Mo., 256 S.W. 1043, dependent entirely and wholly upon proof of a conspiracy (the defendant brain trusted the robbery), it could be found that Key was present not only abetting but actively participating in the robbery as by furnishing and driving his Chevrolet as the get-away automobile. State v. Tripp, Mo., 303 S.W.2d 627, 631. Aside from the cogency of other circumstances, here in contrast to State v. Pippin, 327 Mo. 299, 36 S.W.2d 914, the appellant Key was riding with and transporting the actual robber and the instruments with which the offense was consummated. In summary, the recent case of State v. Gregory, Mo., 406 S.W.2d 662, 665, furnishes more than an analogy: "[W]hile there was no direct evidence of defendant's actual participation in the robbery itself, there was direct evidence of his immediate presence at the time, from which the jury was entitled to draw an inference, if it so found, that he was aiding and abetting in the perpetration of the robbery."

■ And in this background further analysis is unnecessary to demonstrate that there was evidentiary support for the instructions and they are not prejudicially erroneous for the reasons advanced here. "This instruction defined the criminal liability of each of several persons who form a common design to effect a criminal purpose, and one of same in furtherance of such design alone commits the crime. This general instruction is followed by a concrete application of the rule to the facts in evidence." State v. Hill, 273 Mo. 329, 339, 201 S.W. 58, 61.

■ Furthermore in these circumstances the appellant urges that the court erred in failing to instruct the jury as a part of the law of the case (Criminal Rule 26.02(6), V.A.M.R., RSMo 1959, § 546.070(4), V.A.M.S.) upon the lesser and included offense (Cr. Rule 27.01(e); RSMo 1959 § 556.230, V.A.M.S.) of an accessory after the fact (RSMo 1959, § 556.180, V.A.M.S.) because, he says, the evidence is as "consistent with that offense as with the offense charged." As indicated, if the appellant was an accessory it was before the fact and he was therefore tried and convicted "as the principal in the first degree." RSMo 1959, § 556.170, V.A.M.S.; State v. Tripp, supra. The insuperable difficulty with the appellant's contention is that an accessory after the fact "commits an offense separate and distinct from the crime of the principal. Thus, the accessory must be charged and prosecuted for an offense not included in the criminal act of the principal." 21 Am. Jur.2d (Criminal Law) § 126, p. 200; State v. Sullivan, 77 N.J.Super. 81, 185 A.2d 410, 415. "Certain it is he cannot be charged, or punished as the principal offender. His offense is distinctly his own, and he is liable to a different punishment; nor can he be indicted jointly with the principal for the principal's offense." State v. Umble, 115 Mo. 452, 462, 22 S.W. 378, 380.

■ The appellant's other assignment is that the court erred in giving Instruction S–2, a conventional cautionary instruction on formal charge, presumption of inno-

cence concluding with a paragraph on reasonable doubt. In brief it is objected that the portion on reasonable doubt after authorizing an acquittal describes the doubt as a "substantial doubt" not a "mere possibility of his innocence." It is said that the language creates a presumption of guilt, shifts the burden of proof and conflicts with other instructions which in one way or another relate to reasonable doubt. In support of his claim the appellant cites certain dictionary definitions of "substantial" (as meaning "ample") and "reasonable" (as meaning "moderate") and State v. Nueslein, (1857), 25 Mo. 111, 124, from which this particular paragraph was taken. In the case from which it was taken it was held that in using the word "substantial" the instruction was not manifestly erroneous: "We cannot say that the jury was misled by the court informing them that the doubt must be a *substantial* doubt; this did not require anything more than a reasonable doubt of his guilt." Since that case the objections made here and numerous others have been repeatedly lodged against that instruction and it has always been concluded that it "does not create an inference that something more than reasonable doubt is necessary for acquittal and it does not take away defendant's right to have his guilt proved beyond a reasonable doubt." State v. Davis, Mo., 365 S.W.2d 577, 580; State v. Hutsel, 357 Mo. 386, 208 S.W.2d 227.

Questions not required to be specifically assigned as error have been examined and the transcript shows compliance with all matters necessary to be considered by this court "upon the record before it" (Cr.Rule 28.02) and since no prejudicial error is found or demonstrated the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.