**STATE of Missouri, Respondent,**

**v.**

**Larry Chucky STOCKDALE, Appellant.**

**No. 52494.**

Supreme Court of Missouri,
Division No. 1.

June 12, 1967.

**770**

Norman H. Anderson, Atty. Gen., Jefferson City, Glen C. Schomburg, Sp. Asst. Atty. Gen., Kirkwood, for respondent.

J. Whitfield Moody, J. Arnot Hill, Kansas City, for appellant.

HOUSER, Commissioner.

Larry Chucky Stockdale was charged with stealing $7.00 from the person of Gerald L. Spaulding. Section 560.156, subsection 2; § 560.161, subsection 1(2); subsection 2, V.A.M.S. Convicted by a trial jury and sentenced to 5 years in the custody of the department of corrections, he has appealed from the judgment of conviction. Defendant was represented throughout the trial by appointed counsel and in this court by representatives of The Legal Aid & Defender Society of Greater Kansas City.

■ The only point relied on in appellant's brief and oral argument on appeal is that the court erred in submitting the case to the jury because the defendant was not proven guilty beyond a reasonable doubt. The sufficiency of the evidence to sustain a conviction having been challenged, we will review the evidence in detail. In this deter-mination we consider as true the evidence favorable to the State and the favorable inferences reasonably to be drawn therefrom and reject evidence to the contrary. State v. Reagan, Mo.Sup., 328 S.W.2d 26; State v. Thomas, Mo.Sup., 309 S.W.2d 607, 609, and cases cited.

Viewed in this light the jury could have found the following facts: On February 18, 1966 Gerald L. Spaulding, a 23-year-old white man, was walking south on the sidewalk on the west side of Troost Avenue, between 31st Street and Linwood Boulevard in Kansas City. Two young negro males approached Spaulding from the south. They were the defendant and another who was unnamed in the testimony, but whom we will now christen "No. 2" for purposes of identification. The two negroes did not turn aside but walked right into Spaulding —bumped into him. One of the negroes called Spaulding a "white bastard." The negroes then walked Spaulding backwards into the breezeway entrance to an adjacent business house, behind a glass showcase. No. 2 struck Spaulding in the face, said he had a gun, put his hand in his pocket, and asked Spaulding for his money. Spaulding handed his billfold to No. 2, who removed the money and threw the billfold on the ground. Spaulding then struck back, whereupon No. 2 struck Spaulding two more blows in the face. Spaulding's nose was cut, his glasses bent and damaged, his right eye was blackened and he became "kind of blurry or fuzzy." While these events transpired defendant was standing 3 or 4 feet from Spaulding and next to No. 2. About this time another white man, 30-year-old Buddy Dean Newman, who had been walking south, following Spaulding at a distance of some 35–40 feet behind him, and who had seen the encounter, came up to the entrance to the store and started to walk by on the street side of the sidewalk. Defendant, who was then standing on the sidewalk in front of the door, came out toward Newman, saying something which Newman did not understand. According to another witness, there were *three* negro youths in the store

entrance, and one of them, referring to Newman, said "Let's get him," and defendant said to Newman as he approached him, "Hey, you white punk." Newman paused, turned and looked at defendant, who turned as though he was backing off. Newman turned around to go on. After Newman had taken about two steps defendant came up on Newman's side and took a swing at him, trying to strike him in the face. Newman blocked the blow by raising his right arm, and was hit on the arm. Newman stood there, facing defendant, who darted back over to No. 2. Newman looked back into the area between the showcase and the front door of the store, saw Spaulding and noticed that he was bleeding from the nose. Newman proceeded on south, until he heard defendant say "Hey, you bitch." Defendant was directing this language to Sharon Gilmore, a young white woman who was walking south at the place in question, behind Newman. Defendant approached Miss Gilmore, pulled her scarf "clear down," grabbed her by the hair on the back of her head, called her a "white bitch," and evidently tried to stop her. She screamed, swung around, and ran south to a corner drug store. Newman accompanied her to the drug store, where they called the police. Newman returned to the scene to find the "other boy they beat up" because he knew that he was bleeding from the nose. Spaulding was struck again in the face and then the negroes fled the scene. Two negroes were seen running north on Troost by a police officer who had been attracted to the scene by hearing a loud curse word and noises. One of the negroes dropped his hat, ran back and grabbed it, picked it up and started running again. The officer, unable to apprehend the fleeing negroes, received a call to go to the scene of the crime . There he talked to a man and a woman, got a description of the negroes which corresponded with his own description. He put the description on the radio, by way of car-to-car communication. Another officer in the area who had picked this up on his radio observed two negroes running east on

Linwood Boulevard. They tried to get into a cab which was stopped for a traffic light. Refused entry into the cab, they walked on east. Arrested, they were later observed by the first police officer, who identified defendant as the one who lost and retrieved his hat while fleeing from the scene of the crime. A $5 bill and two $1 bills were found wadded up in a handkerchief in the pocket of the suspect arrested with defendant. The two negroes were seen by the arresting officer, walking north on Troost at 34th Street, approximately 45 minutes prior to their arrest. Both in a police lineup and at the trial defendant was identified by Newman as one of the two negroes who accosted Spaulding on the sidewalk and as the "other" one present when Spaulding was assaulted, and as the one who "took a swing" at Newman and who pulled the girl's hair. Miss Gilmore also positively identified defendant in the same manner.

Appellant contends that the foregoing evidence does not sufficiently connect him with the one who actually committed the theft (No. 2) because the victim, Spaulding, testified as follows: that he was unable to identify defendant as the man who was associated with No. 2; that he was not sure about the identification of the man who struck him; that he was not able to identify anyone; that he could not make a positive identification; that he was not able to identify defendant as the "other man that was on the sidewalk," and that "Later on I was positive it wasn't him."

■ It is not essential to a conviction of theft from the person that the victim identify the accused as his assailant. A positive identification of the defendant by other witnesses is sufficient. "The testimony of a single witness, if believed by the jury beyond a reasonable doubt, is sufficient to establish the identity of the defendant in a criminal prosecution since the credibility of the witness and the weight of the evidence is for the jury." State v. Williams, Mo. Sup., 376 S.W.2d 133, 136. The fact that the victim rejects the defendant as a partici-

pant in the commission of the crime does not exonerate the defendant, where he is identified by others as the offender, and the circumstances in evidence strongly show his participation. In State v. Rowland, 174 Mo. 373, 74 S.W. 622, the prosecuting witness in a robbery charge testified that defendant did not have anything to do with robbing him. This statement was held not conclusive upon the state, under the circumstances, where the evidence strongly showed the contrary, and satisfied the court that defendant was one of the two men concerned in the robbery, and where the victim was rendered unconscious before his pockets were turned wrong side out. The jury, believing the other witnesses on the question of the defendant's identity might conclude that the victim was telling the truth in all other respects about the occurrence but that he was mistaken about the identity of the participants in the crime. The identification of the defendant in this case is sufficient. In addition to the identification made by the police officer there were two other witnesses who positively identified defendant as one of the two men who first accosted Spaulding; who was present and in close proximity to the prime actor when Spaulding was forced into the entryway and who acted as a lookout while Spaulding was being assaulted and deprived of his money; who apparently stood at the sidewalk to ward off intruders; who attacked two passersby, and who fled with the prime actor.

 Appellant further contends, on the basis of State v. Castaldi, Mo.Sup., 386 S.W.2d 392, that the state failed to prove on the part of defendant any form of active association with or participation in the actual theft. We cannot agree. In Castaldi the state proved merely defendant's presence at the scene of the crime, an opportunity to commit the crime, suspicious circumstances, and flight. He had a reasonable explanation for the flight. There was no proof that the accused associated himself with the venture. There was nothing to show any form of active participation. Here the defendant actively participated in the commission of the crime, and his association with the venture from beginning to end implicates him as an aider and abetter. The defendant's presence at the scene of the commission of a felony by another, while insufficient by itself, is evidence to be considered in determining whether the defendant was guilty of aiding and abetting the crime. State v. Ramsey, Mo.Sup., 368 S.W.2d 413 [4]. Evidence fairly showing any form of affirmative participation, or that the accused in any way aided, abetted or encouraged another in the commission of a crime, is sufficient to support a conviction. Idem. As stated in Ramsey, no physical act of participation is necessary in many instances. Here, however, there is substantial, indeed overwhelming, evidence of physical acts of participation by this defendant, who participated in the original assault when the two negroes bumped into the victim on the sidewalk; who helped to walk the victim backwards into the entryway where the actual theft was accomplished; who was within 3 or 4 feet of No. 2, during the time No. 2 was hitting the victim in the face, threatening him with the appearance of being armed and taking the money; whose availability and readiness to assist in the perpetration of the offense were clearly demonstrated by the testimony that defendant posted himself at the entrance to the sidewalk and insulted and assaulted two passersby who happened along at the time the theft was in progress and who if permitted to pass by unmolested might conceivably have sounded the alarm and interrupted the proceedings. These facts, in conjunction with defendant's flight in the company of No. 2, the prime actor, demonstrate defendant's association with the principal and direct participation in the theft beyond a reasonable doubt.

An examination of the record as required by Criminal Rule 28.02, V.A.M.R., discloses no error.

Judgment affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.