**STATE of Missouri, Respondent,**

v.

**Billy Earl GRAYSON, Appellant.**

No. 54916.

Supreme Court of Missouri, Division No. 2.

June 14, 1971.

John C. Danforth, Atty. Gen., Kermit W. Almstedt, Asst. Atty. Gen., Jefferson City, for respondent.

Walter L. Metcalfe, Jr., Armstrong, Teasdale, Kramer & Vaughan, St. Louis, for appellant.

BARRETT, Commissioner.

Billy Earl Grayson, with a prior felony record, has been found guilty of stealing from the person, "purse snatching," and his punishment fixed at four years' imprisonment. RSMo 1969, §§ 560.156, 560.161 subdivision 2(1), V.A.M.S.; State v. Stockdale, Mo., 415 S.W.2d 769. The question briefed and argued upon his appeal is whether the in-court identification of the appellant

by the victim, Mollie Gummels, and a witness, Dan Boyer, was tainted by an "extrajudicial identification at the police station," if so, of course, there was a denial of due process. The appellant relies on the Gilbert, Wade and Stovall cases. There was an on-the-scene identification by Mrs. Gummels and Boyer and there is no objection to that identification, there was a second confrontation and identification at the police station and it is asserted that this circumstance distinguishes and renders inapplicable State v. Townes, Mo., 461 S.W.2d 761 and State v. Hamblin, Mo., 448 S.W.2d 603.

The circumstances were that at 5 a. m., on November 5, 1968, Mollie Gummels, age 75 and residing at 3504 Utah Street, was on her way to work at the polls in the church at 3540 Utah. As she walked west on Utah she saw "this one person" walking east toward her, as he got close Mollie "clutched my purse (demonstrating) but he just came toward me and pulled at my purse and I started to scream." The man got the purse away from Mollie and started running down Utah but about "ten or twelve feet from me" he dropped the purse, stopped to pick it up and started running again. Mollie ran after the purse snatcher, all the while screaming, and that attracted a young man, Boyer, who lived nearby and by the time she got to the corner her screaming attracted the attention of a police officer driving a scout car. The officer stopped, Mollie and Boyer gave him a description of the purse snatcher as a Negro male, 18 to 20 years old, "wearing a black-brown sweater jacket and a tan pair of pants." Officer McDonough broadcast the description over his radio and in a few minutes Officer Johnson in a radio patrol car, at 5:19, saw two men in a 1965 Chevrolet, "this car drove right in front of me" and he "observed that the passenger in this vehicle was of similar description to the subject wanted for purse snatching." The officer stopped the Chevrolet and ordered the passenger and driver to get out and "as he, the passenger, was about to get out, I saw him reach down and place a purse into the

gutter right next to where his door was." The officer got the purse, took the passenger, the appellant, and the driver back to the scene, advised appellant of his rights, and immediately upon Grayson's stepping from the police car Mollie said "That is the one there," the taller of the two men. Mollie also identified her purse and its contents, particularly a hidden ten dollar bill and her prescription-colored glasses. In a few minutes the officers, the appellant, Mollie and Boyer all went to the police station; the appellant was again advised of his rights, and Mollie and Boyer again identified the appellant as the purse snatcher and as the man who ran down Utah under the glare of the fluorescent lights. In testifying upon the trial Mollie and Boyer made an in-court identification of the appellant after testifying to the circumstances up to the point of his being returned to the scene of the snatching. It was upon cross-examination of the four witnesses, the policemen, Mollie and Boyer that the police-station confrontation and identification were developed. The whole procedure took place within forty-five minutes, the purse snatching, arrest and both confrontations.

In this background it is not necessary to enter upon a discussion of the cases, it is sufficient to lay aside the identifications from photographs, State v. Parker, Mo., 458 S.W.2d 241, and Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247. In its every aspect this case is governed by State v. Townes and State v. Hamblin, both of which considered and elaborated upon the federal cases. A brief excerpt from the almost identical circumstances in the Townes case is all that is necessary: There robbery victims gave the police descriptions of their assailants and "Shortly thereafter, two officers in a police car in that neighborhood observed two men who correspondeded to the broadcast description of the robbers. The officers gave chase but the two men ran and escaped. However, the officers traced one man to a nearby house where he had broken a basement window and entered the building.

The owner of the house admitted the officers and they found defendant hiding underneath a rug behind a chair on the sun porch. In searching him the officers found the wallet taken from Hornback and a brown paper sack which had been in the cash register and on which had been written by Macklin the name and telephone of the cashier, Johnnie Mae Turner. * * * The clothes worn by defendant when apprehended corresponded to the clothes worn by said robber." The court, applying the federal rules and following State v. Hamblin, concluded "absent specific evidence that the confrontation was conducted so as to be unduly suggestive or unfair, prompt on-the-scene confrontations do not entail due process violations and are not prohibited by Wade and Gilbert. There was no evidence that the confrontation in this case was unduly suggestive or unfair. *In that connection, we think it is of no significance that the confrontation was at the police holdover instead of at the place where the break-in occurred * * *.*" (Emphasis supplied.)

Thus, obviously, there was, other than the police-station identification, an independent basis for the in-court identifications by Mollie and Boyer. It is not claimed that anything took place at the police station that had not already taken place at the on-the-scene confrontation and identification. The appellant gave no statements, made no admissions, he was warned of his rights and upon this record the second confrontation was no more than a mere confirmation of the prior identification a few minutes earlier. The second confrontation may have been unnecessary, the police officers gave as a reason for conducting it the official line of police routine and rules. But by whatever tests, the totality of the circumstances or however viewed there was not in the circumstances an infringement of due process or as suggested by the appellant "constitutional error" and, accordingly, the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

DONNELLY, P. J., MORGAN, J., and HENLEY, Alt. J., concur.

FINCH, J., not sitting.