**Thea CALLAHAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

April 19, 1974.

Anthony M. Wilhoit, Public Defender, J. Vincent Aprile, II, Asst. Public Defender, Frankfort, for appellant.

Ed W. Hancock, Atty. Gen., George Geoghegan, III, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

Thea Callahan and Kenneth Harris were jointly indicted and tried under KRS 433.-140 for the armed robbery of a liquor store in Lexington. Each was found guilty, Harris as the principal perpetrator of the offense and Callahan as an aider and abettor. Callahan appeals from the judgment sentencing him to 10 years' imprisonment in accordance with the verdict.

According to the evidence the jury was authorized to and obviously did believe, on the night of February 2, 1972, Harris entered the store alone, and while he was browsing through the merchandise on display Callahan came in. Harris then proceeded to hold up the store employes at

■■■■■■■■■■

gunpoint and placed $528 in currency from the cash register into a brown paper bag. Callahan, though present, "just stood there" with his hands in his pockets "and watched the whole thing," saying naught and making no overt movement. Harris made the employes lie face down on the floor and said, "Don't get up until we are gone." When the employes got up from the floor both men were gone. Shortly thereafter Harris was identified from photographs at the police station. Callahan was identified by one of the employes about a year later in a police line-up.

At the time of the robbery Harris was living in Lexington with a girl named Faye. According to Faye's testimony, both Harris and Callahan had spent the afternoon of February 2, 1972 "drinking all day and in and out" until about 10:00 P.M., at which time they departed in Harris' automobile. They returned some two hours or more later and "had a brown paper bag with money in it," which they divided on the following morning and got "$200 and some dollars apiece from it." Also during the following morning at Faye's place Harris and Callahan, having procured a morning newspaper in which the robbery was reported, talked about the newspaper article and laughed about it "because it said something about they could pass for brothers." Faye did not report any of this information to the police until November of 1972, when she and Kenneth had a falling out and separated.

Callahan denied ever having been in Faye's home or in the liquor store that was robbed.

■■ In view of the evidence we are of the opinion that appellant's contention that he was entitled to a directed verdict of acquittal does not merit an extended discussion. While it may be true that mere presence at the scene of a crime during its commission will not suffice to prove aiding and abetting, nor will a mere association with the principal perpetrator before, during or afterward, the testimony in this case

proves much more than that. Two additional circumstances, for example, are the division of the money and the fact that Callahan denied and thus sought to conceal his presence. If in truth he was there, as the jury was entitled to believe, his very denial of it was an indication of guilt.

■■ There was no basis for an instruction on the theory that Callahan may have been no more than an accessory after the fact, and it would have been an error to give it. Cf. Reed v. Commonwealth, 270 Ky. 447, 109 S.W.2d 1198, 1199 (1937). "The offense of being an accessory after the fact is a substantive crime which cannot have its beginning until the principal offense has been committed, and is not a lesser degree of the principal crime." Wharton's Criminal Law and Procedure, § 112 (1974 Supp.); State v. McIntosh, 260 N.C. 749, 133 S.E.2d 652, 655 (1963); State v. Key, Mo., 411 S.W.2d 100, 103 (1967).

The judgment is affirmed.

All concur.